1
**Kara L. McCall** (admitted *pro hac vice*)
**kmccall@sidley.com**
2
**SIDLEY AUSTIN LLP**
**One South Dearborn Street**
3
**Chicago, Illinois  60603**
**Telephone:  (312) 853-7000**
4
**Facsimile:  (312) 853-7036**

5
**David R. Carpenter, SBN 230299**
**drcarpenter@sidley.com**
6
**Cameron J. Johnson, SBN 266729**
**cameron.johnson@sidley.com**
7
**SIDLEY AUSTIN LLP**
**555 West Fifth Street, Suite 4000**
8
**Los Angeles, California  90013**
**Telephone:  (213) 896-6000**
9
**Facsimile:  (213) 896-6600**

10
**Attorneys for Defendants**
**NBTY, Inc. and Rexall Sundown, Inc.**

11

12

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| LILIANA CARDENAS, On Behalf of Herself and All Other Similarly Situated California Residents, | ) Case No. 2:11-cv-01615-LKK-CKD |
| Plaintiff, | ) **DEFENDANTS' NOTICE OF MOTION** ) **AND MOTION TO DISMISS SECOND** ) **AMENDED COMPLAINT;** ) **MEMORANDUM OF POINTS AND** ) **AUTHORITIES IN SUPPORT** |
| vs. | ) |
| NBTY, INC., a Delaware corporation and REXALL SUNDOWN, INC., a Florida corporation, | ) **[Fed. R. Civ. P. 8, 9(b), 12(b)(1), 12(b)(6)]** ) |
| Defendants. | ) **Date:  February 13, 2012** ) **Time:  10:00 a.m.** ) **Location:  Sacramento Div., Courtroom 4** |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on February 13, 2012 at 10:00 a.m., or as soon thereafter as

4

counsel may be heard, in Courtroom 4 of the Sacramento Division of the above-entitled court,

5

located at 501 I Street, Suite 4-200, Sacramento, CA 95814, Defendants NBTY, Inc. and Rexall

6

Sundown, Inc. will and hereby do move pursuant to Federal Rules of Civil Procedure 8, 9(b),

7

12(b)(1), and 12(b)(6) to dismiss the Second Amended Complaint ("SAC") for failure to state a

8

claim upon which relief can be granted.

9

The motion is made on the following grounds:

10

(1)      Plaintiff purchased only one of the eight products identified in the SAC and lacks

11

standing to assert any claim, including any putative class claims, relating to products she did not

12

purchase and advertising she did not see or on which she did not rely; and

13

(2)      Plaintiff has failed to plead facts sufficient to state any claim for violation of the

14

Unfair Competition Law or Consumer Legal Remedies Act, or for breach of express warranty,

15

because, notwithstanding amendment of her complaint, (a) she continues to pursue a "lack of

16

substantiation" theory that is not cognizable as a matter of law, and (b) her conclusory, threadbare

17

allegations that unidentified clinical studies do not support the challenged representations are

18

insufficient under both Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure.

19

The motion is based on this notice of motion, the memorandum of points and authorities

20

and exhibits attached hereto, all other papers and pleadings on file, and the argument of counsel at

21

the hearing of this motion.

22

SIDLEY AUSTIN LLP

Dated: November 23, 2011

23

By:  /s/ Kara L. McCall

24

Attorneys for Defendants NBTY, Inc. and
Rexall Sundown, Inc.

25

26

27

28

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

## **<u>TABLE OF CONTENTS</u>**

2

**Page**

3   I.      INTRODUCTION ...................................................................... 1

4   II.     BACKGROUND ...................................................................... 2

5           A.    The Osteo Bi-Flex® Products and Their Different Formulations ......................... 2

6           B.    Plaintiff's First Amended Complaint and Defendants' First Motion to

7                 Dismiss................................................................................. 3

            C.    The SAC ............................................................................... 4

8   III.    PLEADING STANDARDS UNDER RULE 8 AND RULE 9(b).................................... 6

9   IV.     ARGUMENT .......................................................................... 7

10          A.    Plaintiff Lacks Standing to Pursue Claims, Including Putative Class

11                Claims, as to Products She Did Not Purchase and Advertising She Did

                  Not View. .............................................................................. 7

12          B.    Plaintiff Has Not Alleged Sufficient Facts to Support a Claim as to

13                Any Product. ......................................................................... 11

14                1.     Lack of Substantiation Does Not State a Cognizable Theory.................. 11

15                2.     Plaintiff's Conclusory Allegations Regarding Unspecified "Clinical

                         Studies" Are Insufficient Under Rule 8, Much Less Rule 9(b), to State

16                       a Claim. ................................................................ 15

17          C.    The Case Should Be Dismissed with Prejudice................................... 20

18  V.      CONCLUSION ........................................................................ 20

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Ashcroft* v. *Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................6, 16, 17

5

6

*Barrera* v. *Pharmavite, LLC*,
   No. CV 2:11-04153 (C.D. Cal. Sept. 19, 2011) ..........................................2, 11, 12, 13, 17, 19

7

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ............................................................................6, 16, 17

8

9

*Brownfield* v. *Bayer Corp.*,
   No. 2:09-cv-00444, 2009 WL 1953035 (E.D. Cal. July 6, 2009) .........................................6, 7

10

11

*Carrea* v. *Dreyer's Grand Ice Cream, Inc.*,
   No. C 10-01044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) .......................................8, 9, 10

12

*Cattie* v. *Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................................................7

13

14

*Chavez* v. *Nestle USA, Inc.*,
   No. CV 09-9192, 2011 U.S. Dist LEXIS 9773 (C.D. Cal. Jan. 10, 2011) ...............................18

15

16

*Chavez* v. *Nestle USA, Inc.*,
   No. CV 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011) ................................... passim

17

*City of St. Petersburg* v. *Total Containment, Inc.*,
   No. 06-20953-CIV, 2008 WL 5427770 (S.D. Fla. Nov. 4, 2008) .........................................10

18

19

*Fecht* v. *Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) .........................................................................16, 17

20

21

*Fraker* v. *Bayer Corp.*,
   No. CV F 08-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ................................... passim

22

*Freeman* v. *Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .............................................................................18

23

24

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ............................................................................16

25

26

*In re WellNx Mktg. & Sales Pracs. Litig.*,
   673 F. Supp. 2d 43 (D. Mass. 2009) .................................................................9, 10

27

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010) ..................................................................9

28

*Johns* v. *Bayer Corp.*,
No. 09CV1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)........................................... passim

*Kearns* v. *Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................................................................................6

*Laster* v. *T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005)....................................................................7

*Lewis* v. *Casey*,
518 U.S. 343 (1996)..............................................................................................9

*Maine State Retirement Sys.* v. *Countrywide Fin. Corp.*,
722 F. Supp. 2d 1157 (C.D. Cal. 2010) ...................................................................9

*McDonough* v. *Toys "R" US, Inc.*,
638 F. Supp. 2d 461 (E.D. Pa. 2009) ....................................................................10

*McKinniss* v. *Gen. Mills, Inc.*,
No. CV 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)...............................18

*McKinniss* v. *Sunny Delight Bevs. Co.*,
No. CV 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)..................................7

*Miller* v. *Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004) ...............................................................................20

*Mlejnecky* v. *Olympus Imaging Am. Inc.*,
No. 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) .........................1, 8, 9, 10

*Neu* v. *Terminix Int'l, Inc.*,
No. C 07-6472, 2008 WL 2951390 (N.D. Cal. July 24, 2008)..................................16

*Perez* v. *Ocwen Loan Serv'g, LLC*,
No. 10CV1403, 2011 U.S. Dist. LEXIS 73769 (S.D. Cal. July 8, 2011) ...................16

*R.J. Reynolds Tobacco Co.* v. *U.S. Food & Drug Admin.*,
--- F. Supp. 2d ----, 2011 WL 5307391 (D.D.C. Nov. 7, 2011)................................18

*Sprewell* v. *Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...........................................................................6, 17

*Steel Co.* v. *Citizens For A Better Env't*,
523 U.S. 83 (1998)..............................................................................................7

*Stuart* v. *Cadbury Adams USA, LLC*,
No. CV 09-6295, 2010 WL 1407303 (C.D. Cal. Apr. 5, 2010).................................18

*Tietsworth* v. *Sears, Roebuck & Co.*,
No. 5:09-CV-00288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ..........................6

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Vess* v. *Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .........................................................7, 15

*Yourish* v. *Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) ...............................................................15

**STATE CASES**

*Daugherty* v. *Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006) ..............................................................18

*Hill* v. *Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ............................................................18

*Nat'l Council Against Health Fraud, Inc.* v. *King Bio Pharms., Inc.*,
    107 Cal. App. 4th 1336 (2003) ................................................11, 12, 15

**STATUTES**

Cal. Bus. & Prof. Code § 17200. .................................................................5

Cal. Bus. & Prof. Code § 17204 ..................................................................7

Cal. Civ. Code §§ 1572, 1573 .....................................................................6

Cal. Civ. Code §§ 1709 ...............................................................................6

Cal. Civ. Code § 1710 .................................................................................6

Cal. Civ. Code § 1711 .................................................................................6

Cal. Civ. Code § 1750 .................................................................................5

Cal. Civ. Code § 1780(a) .............................................................................7

Cal. Com. Code § 2313(1) ...........................................................................7

Dietary Supplement Health and Education Act of 1994, Pub. L. 103-417.....................2

**RULES**

Federal Rules of Civil Procedure 8 ..................................................... passim

Federal Rules of Civil Procedure 9(b) ................................................ passim

Federal Rules of Civil Procedure 11(b)(3)..................................................19

iv

**OTHER AUTHORITIES**

FDA, *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act* (Dec. 2008) .........................2

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants NBTY, Inc. and Rexall Sundown, Inc. (collectively, "Defendants") respectfully submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss ("Motion") Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6).

## I.   INTRODUCTION

Plaintiff challenges the marketing of the Osteo Bi-Flex® line of dietary supplements, which have been sold in various formulations for over fifteen years.  In her First Amended Complaint ("FAC"), Plaintiff identified eight different Osteo Bi-Flex® products, but failed to identify which of the eight she purchased.  Rather, she broadly challenged the marketing of *all* of the products on the ground that Defendants lacked "competent scientific evidence" to substantiate each of several statements appearing on the products' packaging.

On August 24, 2011, Defendants filed their motion to dismiss the FAC on the grounds, among others, that the FAC (a) failed to plead necessary facts regarding her purchase, including which product she purchased; and (b) was asserting a "lack of substantiation" theory that, as a matter of California law, does not state a cognizable claim.  Rather than oppose the motion to dismiss, Plaintiff filed the SAC.  While the SAC provides some additional detail regarding Plaintiff's purchase, the SAC remains fatally defective, and should be dismissed for the following reasons:

*First*, while Plaintiff has amended her complaint to identify which of the eight products she purchased (Osteo Bi-Flex® Regular Strength only) and to allege that she read and relied on that product's packaging, she lacks standing to pursue any claims, including her putative class claims, as to those products she did not purchase and as to other unspecified advertising that she did not view. *See, e.g.*, *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) (dismissing UCL and CLRA claims as to product not purchased and advertising not viewed, even where plaintiff alleged uniform misrepresentations in advertising as to each product); *Johns v. Bayer Corp.*, No. 09CV1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) (same). The issue here is particularly acute because the Regular Strength product has a different formulation of active ingredients and different packaging from the other Osteo Bi-Flex® products.

*Second*, California law is clear that a private plaintiff cannot attack the promotion of a supplement as being insufficiently substantiated and instead must plead sufficient facts showing that the statement is actually false and misleading. *See Barrera v. Pharmavite, LLC*, No. CV 2:11-04153 (C.D. Cal. Sept. 19, 2011) (unpublished minute order) (granting motion to dismiss similar action against joint-supplement manufacturer brought by same counsel as Plaintiff's counsel here); *Chavez v. Nestle USA, Inc.*, No. CV 09-9192, 2011 WL 2150128, at *5-6 (C.D. Cal. May 19, 2011); *Fraker v. Bayer Corp.*, No. CV F 08-1564, 2009 WL 5865687, at *8-9 (E.D. Cal. Oct. 6, 2009). Notwithstanding Plaintiff's opportunity to amend, the SAC remains fundamentally defective because it continues to pursue a "no substantiation" theory and because its allegations of falsity are nothing more than vague, conclusory assertions devoid of the specificity and factual content required under Rule 9(b) or even the *Twombly*/*Iqbal* standards for Rule 8.

## II.   BACKGROUND

### A.   The Osteo Bi-Flex® Products and Their Different Formulations

According to the SAC, Defendants have manufactured and marketed the Osteo Bi-Flex® line of dietary supplements, which feature the amino sugar glucosamine, since 1996.  (*See* SAC ¶¶ 1, 13, 16.)[1]  Glucosamine is an amino sugar produced by the body and associated with the development of cartilage and other connective tissue.  (*Id.* ¶ 16.)  As with any dietary supplement, glucosamine-based supplements, including the Osteo Bi-Flex® products, are regulated as "foods" by the Food and Drug Administration ("FDA"), and their advertising falls under the jurisdiction of the Federal Trade Commission ("FTC").[2]

The SAC, like the prior complaints, identifies eight Osteo Bi-Flex® products.  (*See* SAC ¶¶ 1 n.1, 13, 14.)  Although all of the Osteo Bi-Flex® products include the active ingredient glucosamine, the products otherwise have varying formulations and different labeling.

---

[1] The SAC identifies eight Osteo Bi-Flex® products and includes screen shots of the front of the packages in Paragraph 14 and attaches printouts of the labels as an exhibit to the Complaint.  The packaging/labels are reproduced for easier viewing and reference and attached as Exhibits A-H to this Motion.

[2] *See generally, e.g.*, Dietary Supplement Health and Education Act of 1994, Pub. L. 103-417; FDA, *Guidance for Industry:  Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act* (Dec. 2008).

For example, some, but not all, of the products include the ingredient chondroitin sulfate, which is a complex carbohydrate that is found in the body's connective tissues and is commonly found in joint supplement products with glucosamine.  (*See, e.g.*, SAC ¶ 18; Exhibit A).)

As another example, all of the products except one also contain 5-LOXIN Advanced™, a concentrated extract of the herb *Boswellia Serrata* ("AKBA").  (*See* SAC ¶ 17.)  Some of the products containing this ingredient feature, on the front of the packaging, the statement, "Shows Improvement in Joint Comfort within 7 Days!" – with a reference on the packaging indicating that the claim is "based on two human studies of 5-LOXIN Advanced™ using subjective measures in which participants rate their joint health.  In these studies, after 7 days, improvement continued to be seen, including in biomarker analysis."  (*See* Exhibits A-D, F, G).  Notably, the "Regular Strength" product that Plaintiff purchased (*see* SAC ¶ 8) is the *only* Osteo Bi-Flex® product without 5-LOXIN Advanced (AKBA), as the SAC recognizes.  (*See* SAC ¶ 17 n.3 ("Osteo Bi-Flex Regular Strength is the only product without AKBA").)  The Regular Strength packaging/label does *not* contain the claim "Shows Improvement in Joint Comfort within 7 Days!"  (*See* SAC ¶ 23; Exhibit H.)

As noted in the SAC, some of the Osteo Bi-Flex® products also contain the ingredient methylsulfonylmethane ("MSM"), which is an organic sulfur compound.  (SAC ¶ 19.)  More specifically, the products with MSM contain variations of the Joint Shield Proprietary Blend™.  The Joint Shield Proprietary Blend generally contains multiple additional ingredients, often including hyaluronic acid referenced in the SAC ¶ 20.  The varying formulations of the Joint Shield Proprietary Blend are described on the packages as including a "Chondroitin/MSM Complex" (Exhibits B, C, D), an "MSM/Chondroitin/5-LOXIN Advanced™ Complex" (Exhibit E), an "Energy Blend" (Exhibit F), or a "Chondroitin Complex" (Exhibit G).  As the SAC recognizes, the Regular Strength product Plaintiff purchased is one of two Osteo Bi-Flex® Products that does *not* include MSM or any variation of the Joint Shield Proprietary Blend™ (*see* SAC ¶ 19 n.5; Exhibit H), and is one of three products that does *not* contain hyaluronic acid (*see* SAC ¶ 20 n.6).

**B.      Plaintiff's First Amended Complaint and Defendants' First Motion to Dismiss**

Plaintiff's Complaint was filed on June 14, 2011.  Plaintiff filed the FAC on July 25, 2011 prior to any filing by Defendants in response to the original complaint.  In the FAC, Plaintiff

contended that Defendants lacked sufficient substantiation for their claims (in Plaintiff's opinion, two clinical trials were required) (FAC ¶ 2), and that this lack of substantiation made the claims false and deceptive.  At the same time, Plaintiff failed to allege what product she purchased, when the alleged misrepresentations were made, when she purchased the product, and what specifically she read and relied on before making her purchase.

Defendants moved to dismiss the FAC on multiple grounds, including (among others) that (a) Plaintiff failed to allege facts necessary to plead standing and other elements of her state law claims as required by Rule 8 and Rule 9(b), where she has not even alleged what product she purchased; and (b) Plaintiff's "lack of substantiation" theory, as a matter of law, did not state a cognizable claim.  Defendants further argued that Plaintiff's allegations about what was represented on the labeling (such as that the products were allegedly promised to "cure" arthritis) were based on mischaracterizations of the labeling and were otherwise deficient in numerous respects; that her nondisclosure theory failed because Plaintiff had not pleaded sufficient facts giving rise to a duty to disclose; and that her express warranty claims failed for the same reasons as her other claims.

**C.    The SAC**

Rather than oppose Defendants' first motion to dismiss, Plaintiff requested from Defendants a stipulation granting consent to file an amended complaint in lieu of opposing the motion, and Defendants agreed, thereby rendering the motion to dismiss moot.  (*See* Dkt. #21.)  The SAC was filed October 24, 2011.  Among the differences between the FAC and SAC are the following:

First, Plaintiff now identifies which of the eight the Osteo Bi-Flex® products she purchased – the Regular Strength product – and alleges that she purchased the product "to relieve her joint pain."  (SAC ¶ 8.)  Plaintiff does not allege purchasing (or reading the packaging/labeling) of any other Osteo Bi-Flex® product.  Moreover, while the SAC alleges that Defendants engaged in "extensive, widespread, comprehensive and uniform nationwide marketing campaign" (*id.* ¶ 1; *see also id.* ¶ 2), Plaintiff does not allege viewing, much less relying on, any marketing or advertising beyond the Regular Strength product packaging.

Second, perhaps recognizing that the labels were not reasonably susceptible to the interpretation advanced in the FAC, Plaintiff has abandoned one of the central theories of the FAC

1    that Defendants marketed the Osteo Bi-Flex products as a "cure" for arthritis or a clinically proven

2    remedy for treating the symptoms of arthritis.  (*See, e.g.*, FAC ¶¶ 1, 4, 8, 10, 33, 35.)

3              Third, in an apparent attempt to de-emphasize the "lack of substantiation" theory being

4    advanced, the SAC has deleted many allegations about what scientific proof is purportedly necessary

5    for statements regarding dietary supplements.  (*See, e.g.*, FAC ¶¶ 2, 5, 7, 8, 11.)  Nonetheless, the

6    SAC still alleges, in essence, the same lack of substantiation theory as the FAC – *i.e.*, that

7    Defendants lack "competent and reliable scientific evidence to support their representations" on the

8    products' packaging/labeling.  (SAC ¶ 1.)  That is, in the SAC, Plaintiff lists the ingredients

9    contained in the various Osteo Bi-Flex® products and alleges that there is "no competent and

10   reliable scientific evidence that taking" any of these ingredients will "help[] to 'promote mobility',

11   'renew cartilage', 'maintain health connective tissue' or improve joint comfort."  (SAC ¶¶ 16-21; *see*

12   *also id.* ¶¶ 24-25, 27, 29.)  These allegations essentially mirror those in the FAC.  (*See* FAC ¶ 25

13   (alleging that challenged claims "are not substantiated by competent scientific evidence").)

14             Perhaps recognizing the shortcomings of her lack of substantiation theory, in the SAC,

15   Plaintiff has attempted to supplement her pleadings with allegations that unidentified "[c]linical

16   cause and effect studies have found no causative link between the ingredients in the Osteo Bi-Flex

17   products and the prevention or lessening of joint degeneration or relief from joint discomfort." (SAC

18   ¶ 1; *see also id.* ¶¶ 16-21, 23-25, 27, 29.)  But while Plaintiff contends that studies finding "no

19   efficacy for the ingredients in the Osteo Bi-Flex products" are "[n]umerous" (*id.* ¶ 24), she does not

20   identify any such study, much less give any details as to what specifically was studied by the

21   researchers, the length or duration of the studies, their methodology, or their specific conclusions.

22             Plaintiff continues to assert three causes of action on behalf of herself and a putative class of

23   California consumers who purchased any of the Osteo Bi-Flex® products during the applicable (but

24   unspecified) limitations periods:  (1) Violation of California's Unfair Competition Law ("UCL"),

25   Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) Violation of California's Consumer Legal Remedies Act

26   ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (3) breach of express warranty.  (SAC ¶¶ 41-69.)

27

28

5

### III.    PLEADING STANDARDS UNDER RULE 8 AND RULE 9(b)

Under Rule 8, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotations and alteration omitted); *see also id.* at 555 n.3 (pleadings must "'show[ ]'" that plaintiff is entitled to relief).  A plaintiff must plead sufficient "factual content" to state a claim that is "plausible on its face," and a pleading is insufficient where "it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (alteration and internal quotations omitted).  A court need not "'accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1950 (quoting *Twombly*, 550 U.S. at 555).  A court should likewise disregard "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a complaint sounds in fraud, it must satisfy Rule 9(b)'s heightened pleading requirement.  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (Rule 9(b) applied to UCL and CLRA claims based on allegations of a "unified course of fraudulent conduct"); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (CLRA, UCL claims subject to Rule 9(b)); *Brownfield v. Bayer Corp.*, No. 2:09-cv-00444, 2009 WL 1953035, at *5 (E.D. Cal. July 6, 2009) (Rule 9(b) applied to UCL and CLRA claims alleging pattern of misrepresentation and concealment in prescription-drug advertising).  Here, Plaintiff's claims clearly sound in fraud.  Among other things, the SAC: (a) alleges that "Defendants' conduct is … fraudulent" (SAC ¶ 63); (b) alleges a purported uniform pattern of misrepresentations and omissions that Defendants allegedly knew were false and misleading (*id.* ¶¶ 1-4, 15, 31, 34, 46-47, 50-52); (c) alleges violations of California fraud statutes for her UCL claim (*id.* ¶ 44);[3] and (d) seeks punitive damages (*id.*, Prayer for Relief).  Plaintiff is thus required to

---

[3] That is, for the "unlawful" prong of her UCL claim, Plaintiffs accuses Defendants of purportedly "violating," among other things, Civil Code §§ 1572-1573 (defining "[a]ctual fraud" and "[c]onstructive fraud"), as well as §§ 1709, 1711 (providing tort remedy for intentional fraud). *Compare* SAC ¶ 44, *with Tietsworth*, 2009 WL 3320486, at *7 (dismissing UCL claim based on violations of Civil Code §§ 1572, 1709, and 1710 for failure to satisfy Rule 9(b)).

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

LA1 2316361v.7

1   satisfy Rule 9(b) by pleading with particularity the "who, what, when, where, and how of the

2   misconduct charged," as well as "what is false or misleading about a statement, and why it is false."

3   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).

4   **IV.    ARGUMENT**

5        **A.    Plaintiff Lacks Standing to Pursue Claims, Including Putative Class Claims, as to Products She Did Not Purchase and Advertising She Did Not View.**

6        Article III of the U.S. Constitution limits federal jurisdiction to cases and controversies in

7   which the plaintiff has standing, and the "irreducible minimum" of constitutional standing consists

8   of three requirements:  (1) a concrete and actual or imminent injury-in-fact, (2) that is "fairly

9   traceable" to the challenged conduct, and (3) a likelihood that the requested relief will redress the

10   alleged injury.  *See Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 102-03 (1998); *Brownfield*,

11   2009 WL 1953035, at *3.

12        The causes of action in the SAC have their own state law standing and injury requirements.

13   The UCL and CLRA both contain statutory standing limitations that require the plaintiff to show an

14   injury caused by the challenged practice and, specifically in cases of alleged misrepresentations, a

15   showing of reliance on the challenged representation.  *See* Cal. Bus. & Prof. Code § 17204 (limiting

16   UCL standing to plaintiff who "has suffered injury in fact and has lost money or property as a result

17   of" alleged violation); Cal. Civ. Code § 1780(a) (limiting CLRA standing to consumers who suffered

18   "damage as a result of" a prohibited practice); *Brownfield*, 2009 WL 1953035, at *3; *Cattie v. Wal-*

19   *Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007); *Laster v. T-Mobile USA, Inc.*, 407 F.

20   Supp. 2d 1181, 1194 (S.D. Cal. 2005).  A claim for breach of express warranty likewise requires that

21   the alleged affirmation of fact or promise form part of the "basis of the bargain" and that the breach

22   caused injury to the plaintiff.  *See* Cal. Com. Code § 2313(1); *McKinnis v. Sunny Delight Bevs. Co.*,

23   No. CV 07-02034, 2007 WL 4766525, at *5-6 (C.D. Cal. Sept. 4, 2007).

24        Here, Plaintiff still does not allege with specificity when she made her purchase (stating only

25   that it was within the last year and a half), how many purchases she made, or what she paid.  But

26   even if Plaintiff has sufficiently alleged standing as to the product she did purchase – Osteo Bi-

27   Flex® Regular Strength – she lacks standing to pursue claims as to the remaining seven products she

28   did not purchase.  A number of California district courts have addressed this precise issue and

7

concluded that a plaintiff, particularly in the context of a putative class action, "cannot expand the scope of [her] claims to include a product [s]he did not purchase or advertisements relating to a product that [s]he did not rely upon." *Johns v. Bayer Corp.*, No. 09CV1935, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010); *see also Mlejnecky  v. Olympus Imaging Am. Inc.*, No. 2:10-CV-02630, 2011 WL 1497096, at *4-5 (E.D. Cal. Apr. 19, 2011); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011).

   In *Johns*, the plaintiff brought UCL and CLRA claims challenging the marketing of the defendants' One-A-Day™ multivitamins for men – specifically, that the defendants misrepresented that the ingredient selenium could reduce the risk of prostate cancer – and he sought to represent a class of consumers who purchased the "One-A-Day™ Men's Health Formula" or "One-A-Day™ Men's 50+ Advantage" products. *See Johns*, 2010 WL 476688, at *1-2.  Although the plaintiff alleged identical misrepresentations on the products' packaging and in advertising and a "uniform advertising campaign designed to promote the health benefits of selenium" (*id.* at *1, 5), the *Johns* court held that the plaintiff lacked standing to pursue claims as to the Men's 50+ Advantage product. *Id.* at *5.  There, as here, the plaintiff had purchased only of one of the products at issue (the Men's Health Formula) and had done so based solely on his review of that product's packaging.  *Id.*  He did not allege having been exposed to or having relied on any marketing for the Men's 50+ Advantage product or purchasing it, and indeed did not even allege relying on any advertising for the Men's Health Formula product.  *Id.*  The court explained that the "statutory standing requirements of the UCL and CLRA are narrowly prescribed" and thus granted the motion to dismiss any claims in the complaint beyond what the plaintiff purchased and the representations contained on the particular product's packaging.  *Id.*

   In *Mlejnecky*, Judge Mendez reached the same result on a motion to dismiss where the plaintiff brought putative class claims under the UCL and CLRA based on the allegation that the defendant falsely marketed its "Stylus SW" cameras as "shockproof" and "waterproof."  *See Mlejnecky*, 2011 WL 1497096, at *1, 4.  There, the plaintiff had purchased the "Stylus 1030" model, which allegedly broke after being dropped from a short distance, and the court found she had standing to pursue a claim as to the "shockproof" feature of the Stylus 1030.  *Id.* at *4.  The court

held, however, that the plaintiff *lacked* standing to pursue any claims as to the related camera model

that she did not purchase, the Stylus 850.  *Id.*  In so holding, the court specifically rejected the

plaintiff's argument that "the Stylus 850 SW has the same underlying defects as the Stylus 1030 and

Defendant used the same advertisement for all Stylus cameras."  *Id.*  Rather, Judge Mendez cited and

concurred with the reasoning in *Johns* and concluded that because plaintiff "does not claim that she

suffered any economic injury from any alleged misrepresentations regarding the Stylus 850 SW,"

claims concerning that camera model had to be dismissed.  *Id.*  Applying similar reasoning, the court

further held that the plaintiff lacked standing to assert claims based on purported defects she did not

experience – *i.e.*, regarding the Stylus 1030's "waterproof" feature – and based on advertisements

she did not view – *i.e.*, representations allegedly made in "unspecified 'marketing materials' and

'other places.'"  *Id.* at *5.

  *Carrea* is to the same effect.  There, the plaintiff brought putative class claims alleging that

the defendants misrepresented the health content of their "Drumstick" and "Dibs" ice cream

products.  *Carrea*, 2011 WL 159380, at *1.  While finding that the plaintiff had sufficiently alleged

Article III and state law standing as to the "Drumstick" products he purchased, the court held that the

plaintiff lacked standing as to the "Dibs" products that he did not purchase.  *Id.* at *3.  Similar to

*Johns* and *Mlejnecky*, the alleged misrepresentation there was, in essence, the same for all of the

products – *i.e.*, the fat content and healthfulness of the ice cream contained therein – but the court,

citing *Johns*, limited the claims to what the plaintiff himself purchased and purportedly relied on.  *Id.*

  *Johns*, *Mlejnecky*, and *Carrea* all stand for the same proposition, which is dispositive here:  a

plaintiff lacks standing to bring claims, including putative class claims, as to products she did not

purchase and marketing she did not view, *even where* the products are related and the plaintiff is

alleging uniform marketing and the same misrepresentations and defects as to them all.[4]  As in

---

[4] Case law in other contexts and across jurisdictions is in accord.  *See, e.g.*, *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1164 (C.D. Cal. 2010) (holding in securities context, that "[e]ven where there is a common shelf registration statement… Plaintiffs have standing only with respect to the 81 Offerings in which the named plaintiffs purchased"); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010) (named plaintiffs could challenge misstatements or omissions in offerings through which they purchased securities, but lacked standing to sue based on similar allegations about offerings through which they did not purchase securities); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (plaintiff cannot use class action device to create standing); *In re WellNx Mktg. & Sales Pracs. Litig.*, 673 F. Supp. 2d 43, 54-

*Johns*, *Mlejnecky*, and *Carrea*, Plaintiff here is attempting to assert claims and initiate a class action as to all Osteo Bi-Flex® products and all marketing for those products, even though she only purchased one formulation and alleges only that she relied on the packaging for that particular product.

Indeed, the standing problem here is even more acute than in the cases above because the Regular Strength product that Plaintiff purchased has a different formulation and different package than the other products.  As Plaintiff concedes, the Regular Strength product is the *only* Osteo Bi-Flex product that lacks the 5-LOXIN Advanced ingredient, and it similarly lacks any version of the Joint Shield Proprietary Blend (a formulation that itself varies from product to product) and a number of other ingredients present in many, if not most, of the other products.  (*See* SAC ¶¶ 17 & n.3, 19 & n.5, 20 & n.6, 21.)  As a result, several paragraphs of the SAC are entirely irrelevant to Plaintiff's purchase.  For example, in Paragraph 22 of the SAC, Plaintiff purports to challenge the statement on certain packages, "Shows improvement in joint comfort," which is made in reference to two studies involving 5-LOXIN Advanced, an ingredient not found in the Regular Strength product Plaintiff purchased.  Accordingly, that statement is not on the Regular Strength label and does not pertain to the Regular Strength product.  Indeed, even a casual review of the product packages shows that the Regular Strength product has patently different front packaging compared to all of the other products.  (*See* SAC ¶¶ 14, 23.  *Compare* Exhibits A-G, *with* Exhibit H.)

Because Plaintiff "cannot expand the scope of [her] claims to include a product [s]he did not purchase or advertisements relating to a product that [s]he did not rely upon," *Johns*, 2010 WL 476688, at *5, Plaintiff's claims, including the putative class claims, must be dismissed as to all of the products except the Osteo Bi-Flex® Regular Strength product.  The SAC must likewise be

---

55 (D. Mass. 2009) (motion to dismiss granted for lack of Article III standing as to products that named plaintiffs in putative class action did not purchase, and explaining that plaintiffs "cannot invoke the machinery of a class action" to expand scope of claims); *McDonough v. Toys "R" US, Inc.*, 638 F. Supp. 2d 461, 473 (E.D. Pa. 2009) (holding that plaintiffs in class action suit lacked standing for claim regarding bedding sets that plaintiffs did not purchase); *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953-CIV, 2008 WL 5427770, at *3-4 (S.D. Fla. Nov. 4, 2008) (plaintiffs lacked Article III standing to assert claims as to products they did not install or use, notwithstanding theory of "uniform defect" across products, and likewise could not represent putative class members with potential claims as to such products).

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

dismissed as any claim based on the unspecified marketing and advertising that Plaintiff does not allege seeing or relying on (*see, e.g.*, SAC ¶¶ 1, 2), and, at best, must be limited to the specific representations on the Regular Strength package/label.

However, as explained below, the SAC should be dismissed in its entirely for failure to plead sufficient facts to state a claim as to *any* of the Osteo Bi-Flex® products.

**B.    Plaintiff Has Not Alleged Sufficient Facts to Support a Claim as to Any Product.**

To state a claim for the false advertising or marketing of a product, the plaintiff "has the burden to plead and prove facts that show that the claims that Defendant made in connection with the product are false or misleading." *Fraker v. Bayer Corp.*, No. CV F 08-1564, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009). As the California Court of Appeal has explained, the California legislature has granted prosecuting authorities, *but not private plaintiffs*, the authority to demand substantiation for advertising claims; accordingly, where a plaintiff challenges the represented efficacy or benefits of a product, the plaintiff bears the burden of coming forward with evidence sufficient to "establish[]" the "falsity of the advertising claims." *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc. ("King Bio")*, 107 Cal. App. 4th 1336, 1345-48 (2003).

As explained below, the SAC here fails to state any claim because (1) Plaintiff's continued attempt to allege a lack of substantiation does not state a cognizable claim under California law; and (2) Plaintiff's conclusory allegation that unspecified "clinical studies" purportedly show that joint supplements are ineffective is insufficient under Rule 9(b) or even Rule 8.

**1.    Lack of Substantiation Does Not State a Cognizable Theory.**

In three recent decisions – all involving nutritional supplement health benefits – California district courts have conclusively held that an alleged lack of substantiation for a representation is not sufficient to state a claim for violation of the UCL, CLRA, or breach of express warranty. *See Fraker*, 2009 WL 5865687, at *8-9 (dismissing UCL, CLRA, and express warranty claims); *Chavez v. Nestle USA, Inc.*, No. CV 09-9192, 2011 WL 2150128, at *5-6 (C.D. Cal. May 19, 2011) (dismissing UCL and related False Advertising Law claims); *Barrera v. Pharmavite, LLC*, No. CV 11-04153 (C.D. Cal. Sept. 19, 2011) (unpublished minute order) (dismissing UCL, CLRA, and

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   express warranty claims) (attached hereto as Exhibit I).  (*See also* Defs.' Mem. of Law in Supp. of

2   Motion to Dismiss, filed Aug. 24, 2011 [Dkt. #19], at 10-12.)

3        In *Fraker*, the plaintiff challenged certain health-benefit claims made by the defendant in

4   marketing its "WeightSmart" multivitamin, alleging, as here, that the defendant had '"no reasonable

5   basis, consisting of competent and reliable scientific evidence to substantiate'" the claims.  *Fraker*,

6   2009 WL 5865687, at *4 (quoting the complaint).  In that case, the FTC had brought an action

7   against the manufacturer resulting in a consent decree prohibiting the company from continuing with

8   such claims.  *See id.*  Chief Judge Ishii, however, explained that, although administrative agencies

9   like the FTC may have the authority to require substantiation for advertising claims, California law

10  provides "no private remedy for unsubstantiated advertising."  *Id.* at *8 (citing and discussing *King*

11  *Bio Pharm.*).  Rather, the court explained, a plaintiff must allege and ultimately prove that the

12  challenged marketing is "*actually* false or misleading," *id.* (emphasis added), and it found "no

13  authority for the proposition that the absence of substantiation of an advertising claim is, itself,

14  falsity or somehow misleading."  *Id.*  The court thus dismissed the false advertising claims  *Id.* at *9.

15       Similarly, in *Chavez*, the plaintiff asserted California-law false advertising claims, alleging

16  that the defendant had misrepresented the health benefits of its Juicy Juice products for children's

17  brain development, immune function, and digestion.  *Chavez*, 2011 WL 2150128, at *1-3.  As in

18  *Fraker* and here, the complaint alleged that the '"Defendant does not possess  requisite scientific

19  evidence'" for the claims.  *Id.* at *1 (quoting complaint); *see also id.* at *5.  In an opinion granting

20  the defendant's motion to dismiss, the court agreed with *Fraker* and squarely held that "'[l]ack of

21  substantiation' is not a cognizable theory" under California's UCL or False Advertising Law.  *Id.* at

22  *5; *see also id.* ("Plaintiffs' allegations regarding a lack of substantiation for Defendant's product

23  claims (as alleged here) cannot support a cause of action ….").

24       Most recently, in *Barrera*, the court addressed a complaint substantially similar to the FAC in

25  this case.  That case was brought by the same Plaintiffs' counsel as counsel for Plaintiff here against

26  the manufacturer of a different glucosamine supplement, "TripleFlex;" and the complaint similarly

27  challenged representations on the product label that TripleFlex "will improve joint 'comfort,

28  mobility and flexibility'" through nutrients '"needed for daily maintenance and renewal of your

joints.'"  *Barrera*, Minute Order at 1-2 (quoting complaint).  Relying on *Fraker* and *Chavez*, the court granted the motion to dismiss.  *Id.* at 3-5.  It held that, notwithstanding "conclusor[y]" allegations that the label representations were "'false and misleading'" and "'factually baseless,'" plaintiff was alleging a "lack of substantiation" theory that failed as a matter of law.  *Id.*

Notwithstanding Plaintiff's opportunity to amend, the SAC continues to rely on the same insufficient allegations from the FAC and made in the cases above.  The SAC is replete with allegations that the Osteo Bi-Flex® marketing is deceptive because Defendants lack "competent and reliable scientific evidence" for the product representations.  For example:

- SAC ¶ 1:  "Defendants also do not have competent and reliable scientific evidence to support their representations."

- SAC ¶ 16:  "There is no competent and reliable scientific evidence that taking glucosamine … helps to promote mobility, renew cartilage, maintain healthy connective tissue or improve joint comfort."

- SAC ¶ 17:  "There is no competent and reliable scientific evidence that taking AKBA … helps to 'promote mobility,' 'renew cartilage,' 'maintain healthy connective tissue' or improve joint comfort.  Clinical cause and effect studies have been unable to *confirm* a cause and effect relationship between AKBA supplementation and joint renewal or rejuvenation" (emphasis added).

- SAC ¶ 18:  "There is no competent and reliable scientific evidence that taking chondroitin … helps to 'promote mobility,' 'renew cartilage,' 'maintain healthy connective tissue' or improve joint comfort."

- SAC ¶ 19:  "There is no competent and reliable scientific evidence that taking MSM … helps to 'promote mobility,' 'renew cartilage,' 'maintain healthy connective tissue' or improve joint comfort."

- SAC ¶ 20:  "There is no competent and reliable scientific evidence that taking hyaluronic acid … helps to 'promote mobility,' 'renew cartilage,' 'maintain healthy connective tissue' or improve joint comfort."

- SAC ¶ 21:  "There is no competent and reliable scientific evidence that taking any of [the other ingredients such as vitamin D, vitamin C, manganese, boron and collagen] … helps to 'promote mobility,' 'renew cartilage,' 'maintain healthy connective tissue' or improve joint comfort."

- SAC ¶ 23:  Alleging that Defendants' representations are made "without any scientifically valid confirmation that Osteo Bi-Flex is an effective joint treatment."

- SAC ¶ 24:  "Defendants did not and do not have competent and reliable scientific evidence that any of the ingredients in their Osteo Bi-Flex products taken alone or in combination are effective at helping provide joint renewal or rejuvenation."

- SAC ¶ 27:  Alleging a failure to disclose that "Defendants have no competent and reliable scientific evidence that their Osteo Bi-Flex products are effective in helping provide joint renewal or rejuvenation as represented."

- SAC ¶ 29:  Alleging that "Plaintiff would not have purchased the Product had she known" that "Defendants did not possess competent and reliable scientific evidence to support their joint renewal and rejuvenation representations."

- SAC ¶ 59:  "Defendants violated the [CLRA] by representing and failing to disclose material facts on the Osteo Bi-Flex product labels and packages … when they knew, or should have known, that the representations were unsubstantiated …."

Further illustrating the point, Plaintiff challenges the representation on certain product labels, "Shows Improvement in Joint Comfort within 7 Days!"  (*See* SAC ¶¶ 17, 22.)  The labels making this statement expressly indicate that the statement is based on two human studies of 5-LOXIN Advanced.  (*See* SAC ¶ 22; Exhibits A, B, C, D, F, G).  Yet Plaintiff still alleges that the representation is misleading because "[n]o identifying information is included to enable consumer to locate and review the studies."  (SAC ¶ 22.)  Plaintiff thus asserts, in entirely conclusory fashion, that the studies must not be "competent and reliable evidence of efficacy," and that it is thus deceptive for Defendants to make such a representation.  *Id.*  That is unabashedly the kind of demand for substantiation that, under California law, a private plaintiff is not entitled to make and

the kind of lack of substantiation theory that is insufficient to support a claim.  *See Fraker*, 2009 WL 5865687, at *8-9; *King Bio*, 107 Cal. App. 4th at 1345-47.

### 2.   Plaintiff's Conclusory Allegations Regarding Unspecified "Clinical Studies" Are Insufficient Under Rule 8, Much Less Rule 9(b), to State a Claim.

Nor can Plaintiff save her complaint by pairing her allegations of a lack of substantiation with the conclusory assertion that "[c]linical cause and effect studies have found no causative link between the ingredients in the Osteo Bi-Flex® products and the prevention or lessening of joint degeneration or relief from joint discomfort."  (SAC ¶ 1; *see also* SAC ¶¶ 16-25, 27, 29.)  Despite her formulaic recitation of essentially the same phrase throughout the complaint, Plaintiff fails to provide any details whatsoever about the unspecified "clinical cause and effect studies" that the SAC is supposedly referencing.  Plaintiff does not identify a single study by name, nor does she describe the joint supplement ingredients or formulas that were tested, the metrics or outcomes being studied, the methodology used, or the actual conclusions reached by the researchers.  Such allegations are insufficient to state a claim and survive a motion to dismiss.

As explained above, in Part III, Rule 9(b) applies to the claims here because they are based on averments of a uniform course of fraudulent conduct, and to satisfy Rule 9(b), a plaintiff must plead with specificity not only the circumstances of the purchase but also "what is false or misleading about a statement, and why it is false."  *Vess*, 317 F.3d at 1106 (internal quotation omitted).  For example, in *Vess*, the plaintiff alleged that the defendants attempted to promote the sale of the drug Ritalin by fraudulently and falsely representing that the diagnostic criteria for Attention Deficit Disorder were scientifically reliable; and she further alleged that the defendants "improperly clustered" data from studies to support criteria that were not objective.  *Id.* at 1101.  In affirming dismissal of the fraud-based claims, the Ninth Circuit explained that plaintiff's allegations failed to meet the requirement of Rule 9(b) because they were "unsupported by details" and plaintiff failed "to point to the specific scientific literature" that purportedly undermined the reliability of the diagnostic criteria.  *Id.* at 1107; *see also Yourish v. Cal. Amplifier*, 191 F.3d 983, 992-95 (9th Cir. 1999) (finding it insufficient to allege that representation was false based on "true facts" revealed in "non-public information" possessed by defendants, "without any other details about the existence of

the alleged information"); *Perez v. Ocwen Loan Serv'g, LLC*, No. 10CV1403, 2011 U.S. Dist. LEXIS 73769, at *9 (S.D. Cal. July 8, 2011) (dismissing fraud where plaintiff failed to allege "what was false or misleading" and instead "point[ed] blindly to 'the record'").

The purpose of Rule 9(b), in this context, it is to require the plaintiff to allege the facts it believes show a defendant's statements are false so that "the court [may] consider what inferences [those] facts will support." *See Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1552 (9th Cir. 1994) (plaintiff must allege facts giving rise to inference that representation was known to be false when made, rather than relying on conclusory allegations that assets failed to perform as promised).  For example, in *Neu v. Terminix Int'l, Inc.*, No. C 07-6472, 2008 WL 2951390 (N.D. Cal. July 24, 2008), the plaintiff brought fraud-based UCL and CLRA claims based on an allegation that the defendant misrepresented the quality of its termite baiting systems.  The court had granted a motion to dismiss the original complaint for failure to satisfy Rule 9(b), including failing to specify how the plaintiff would prove that the challenged statements were knowingly false when made.  *See id.* at *1, 3.  The court then granted a renewed motion to dismiss because, although the amended complaint identified a particular study and other evidence as purportedly supporting the allegations, the study and other evidence did not actually support the claim of falsity.  *Id.* at *3-4.

Even under Rule 8, a plaintiff must plead sufficient "factual content" to state a claim that is "plausible on its face," and "naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 556 U.S. 662, 129 S. Ct. at 1949 (alteration and internal quotations omitted).  That is, a complaint must contain sufficient factual allegations to "show that the pleader is entitled to relief," lest a plaintiff "with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in *terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 557-58 (alteration and internal quotations omitted); *see also Chavez*, 2011 WL 2150128, at *4, 6 (holding that plaintiff was required to allege specific facts articulating why advertising was false rather than merely unsubstantiated: "[B]efore embarking towards a trial in this case, it is not unreasonable to expect Plaintiffs to plead facts that show they would have some remote

chance of prevailing at trial.").  Even under case law prior to *Twombly* and *Iqbal*, conclusory

allegations in a complaint can be disregarded.  *See Sprewell*, 266 F.3d at 988.

For several reasons, the allegations here fails to satisfy Rule 9(b) or even Rule 8.

*First*, the SAC nakedly refers to unspecified "clinical cause and effect studies" without

providing any details identifying the studies or scientific literature or explaining what was studied

and what the conclusions were.  Even the SAC's lack of substantiation allegations – that Defendant

lack "competent and reliable scientific evidence" to support the product claims – are entirely

conclusory.  These threadbare allegations, on their face, do not provide the level of detail required by

Rule 9(b) or the factual content required by Rule 8.

*Second*, without further factual enhancement, the allegations substantively are no different

from what appeared in the FAC, and was rejected in *Barrera* – *i.e.,* allegations that the claims are

"false and misleading" and "factually baseless."  Plaintiff does not allege that there are any clinical

studies specific to the Osteo Bi-Flex® products or formulations in those products; rather, she has

only generally alleged that there have been unspecified studies relating to *ingredients* that are in the

Osteo Bi-Flex® products.  Without further information about what was studied and found, there is

no way for the court to "consider what inferences" those unspecified studies would support, *Fecht*,

70 F.3d at 1082, including how those studies can be applied to the specific formulations in the Osteo

Bi-Flex® products and whether those studies show that the representations on the Osteo Bi-Flex®

products' labeling are *actually false and misleading*, as opposed to there simply being a lack of

complete scientific agreement or a question of sufficient substantiation or confirmation.[5]  Thus, the

---

[5] It is not even clear in the SAC whether Plaintiff is alleging that the Osteo Bi-Flex® products are unable to provide any joint support benefits or whether the product packages purportedly over-represent the extent of those benefits.  For example, although the SAC no longer alleges that the products promise a "cure" for arthritis, it continues to allege that the products are represented as effective "for all joints in the human body, for adults of all ages and for all stages or variations of joint disease or ailments."  (SAC ¶ 1; *see also id.* ¶¶ 15, 28.)  Such allegations seem to imply that the products are beneficial for some consumers, but that the labeling contains an allegedly deceptive implication of universal efficacy.

There is no basis, however, to infer from the products' respective labeling, any such claim of universal efficacy for all people or in treating all forms of joint disease.  Plaintiff cites to no such representation on any of the products.  Rather, every claim being challenged is made in reference to an express disclaimer:  "These statements have not been evaluated by the Food and Drug Administration.  This product is not intended to diagnose, treat, cure or prevent any disease."  And no consumer – even for prescription drugs – could reasonably assume or believe that a given product

17

conclusory allegations in the SAC do not state anything beyond the "lack of substantiation" theory previously alleged, and are insufficient to state a claim that is plausible on its face and to show an entitlement to relief.

*Third*, the allegations are likewise insufficient to support any nondisclosure claim.  A plaintiff cannot state such a theory under the UCL or CLRA without alleging facts giving rise to an affirmative duty to disclose.  *See Daugherty v. Am. Honda Motor Co.,* 144 Cal. App. 4th 824, 838 (2006).  An omission must concern a fact "the defendant was obliged to disclose" or, alternatively, "be contrary to a representation actually made by the defendant."  *Id.* at 835.  Here, because Plaintiff has not stated any factual basis to support an affirmative misrepresentation, she likewise has not alleged facts sufficient to plead any duty to disclose.  *See Chavez*, 2011 WL 2150128, at *6-7 (dismissing plaintiffs' nondisclosure claim for failure to sufficiently plead duty to disclose after finding that lack-of-substantiation theory failed to state a claim of affirmative misrepresentation).  Moreover, the SAC does not identify what *facts* Defendants purportedly were required to disclose.  Instead, all the SAC contains are vague and conclusory allegations about the unexplained findings of unspecified studies.  Those allegations cannot form the basis of any "disclaimer" or "disclosure" that Defendants could conceivably be required to provide.  *Cf. R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, --- F. Supp. 2d ----, 2011 WL 5307391, at *5 (D.D.C. Nov. 7, 2011) (discussing "compelled speech" doctrine under First Amendment and noting that disclaimers can be required

---

will always be effective and would be effective for conditions not even described on the labeling.

Even on motions to dismiss, courts routinely reject claims, like those here, that are premised on unreasonable interpretations of the challenged marketing and an unsupportable notion of what a "reasonable consumer" would perceive.  *See, e.g.*, *McKinniss v. Gen. Mills, Inc.*, No. CV 07-2521, 2007 WL 4762172, at *2 (C.D. Cal. Sept. 18, 2007) (rejecting plaintiffs' contentions about message conveyed by product packaging under UCL's and CLRA's "reasonable consumer" standard); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304-05 (2011) (affirming dismissal of complaint alleging that symbol on water bottle packaging connoted objective measure or third-party endorsement of product's environmental benefits); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of UCL and CLRA claims where alleged inference was "unreasonable"); *Chavez v. Nestle USA, Inc.*, No. CV 09-9192, 2011 U.S. Dist LEXIS 9773, at *13-14 (C.D. Cal. Jan. 10, 2011) (noting that dismissal may be appropriate where nothing on label supported plaintiff's assertion that defendants represented product as having ability to make children smarter); *Stuart v. Cadbury Adams USA, LLC*, No. CV 09-6295, 2010 WL 1407303, at *3-4 (C.D. Cal. Apr. 5, 2010) (dismissing complaint where "'allegations of consumer deception defy common sense and are contradicted by the actual advertising claims made by Cadbury'" (quoting earlier court order)).

1    only where it involves "purely factual and uncontroversial information" and is necessary to avoid

2    confusion or deception).

3    *Fourth*, the conclusory nature of the allegations provide no indication of the kind of

4    reasonable investigation into the factual allegations required by Rule 11(b)(3).  For example, in

5    *Johns*, the plaintiff alleged falsity in the promotion of the One-A-Day™ Men's multivitamins and

6    referred in the complaint to several studies purportedly supporting the allegations, but the court

7    struck the allegations from the complaint because the allegations were borrowed from a complaint

8    letter sent by an advocacy group to the FTC.  *See Johns*, 2010 WL 476688, at \*2-3; *see also Fraker*,

9    2009 WL 5865687, at \*4-5 (stripping from the complaint allegations based on FTC investigation and

10   consent decree).[6]  Here, Plaintiff cannot even draw on an FTC or FDA complaint and does not refer

11   to any support whatsoever for her allegations.

12                                    *      *      *

13   Notably, Plaintiff is not challenging any representation or alleged defect peculiar to the Osteo

14   Bi-Flex® products.  Rather, as further reflected in *Barrera*, her theory appears to be that joint

15   supplements, in general – *i.e.*, the ingredients glucosamine and chondroitin, among others – have not

16   be shown to be effective.  Yet the class of supplements at issue in this action have been on the

17   market for nearly twenty years.  Plaintiff makes no attempt whatsoever to describe the state of

18   scientific knowledge regarding these supplements or their ingredients, to explain what the research

19   into the various ingredients actually tested and shows, or to identify what has occurred to support the

20   position that these long-established products are not effective and that promotion of their function

21   should be deemed false and misleading.  The vagaries of the complaint do not indicate any factual

22   basis on which the court could grant relief, and instead show that this case, at bottom and inexorably,

23   is designed to force Defendants to bear the burden, through discovery and litigation, of coming

24   forward and proving the substantiation for their claims.  Neither federal law nor state law permits

25   such an action to proceed.

26

27

28   _____

[6] The plaintiffs' counsel in *Johns* was the same firm representing Plaintiff here.

### C.     The Case Should Be Dismissed with Prejudice.

For the reasons set forth above, the Motion to Dismiss should be granted, and this case should be dismissed with prejudice.  Plaintiff has already amended her complaint twice, and the claims remain fundamentally defective.  Plaintiff's explanation in the SAC of what product she purchased and what representations she saw have only confirmed that she cannot assert claims as to the other products and any unspecified marketing beyond the Regular Strength packaging.  And notwithstanding the opportunity to amend in the face of Defendants' prior motion to dismiss, she was unable to supplement her defective lack of substantiation theory with anything beyond a conclusory and insufficient allegation regarding unspecified "clinical studies."  There is no basis to believe that, in any further amendment, Plaintiff could cure these defects and transform the nature of her improper action.  *See, e.g.*, *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 622 (9th Cir. 2004) (affirming dismissal without leave to amend and explaining:  "Where the plaintiff has previously filed an amended complaint, … the district court's discretion to deny leave to amend is particularly broad." (quotation omitted)).

## V.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Second Amended Complaint should be granted and the case should be dismissed with prejudice.

Dated: November 23, 2011                          SIDLEY AUSTIN LLP


                                                  By:/s/ Kara L. McCall
                                                     Kara L. McCall
                                                     Attorneys for Defendants NBTY, Inc. and
                                                     Rexall Sundown, Inc.

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT