1

2

3

4

5                      UNITED STATES DISTRICT COURT

6              FOR THE EASTERN DISTRICT OF CALIFORNIA

7

LILIANA CARDENAS, on Behalf
8 of Herself and All Other
Similarly Situated
9 California Residents,

10                                    NO. CIV. S-11-1615 LKK/CKD

        Plaintiff,

11

    v.

12

NBTY, INC., a Delaware
13 corporation and REXALL
SUNDOWN, INC., a Florida            O R D E R
14 corporation,

15

        Defendants.
16 _____/

17      This class action alleges that Defendants NBTY Inc. ("NBTY")

18 and Rexall Sundown Inc. ("Rexall") deceptively market and sell the

19 Osteo Bi-Flex line of joint health dietary supplements without

20 support for the efficacy representations made about those products.

21 Plaintiff Liliana Cardenas, on behalf of herself and other

22 similarly situated consumers of the Osteo Bi-Flex products, alleges

23 violations of California's Consumers Legal Remedies Act and its

24 Unfair Competition Law, and also allege breach of express warranty.

25      Presently before the court is Defendants' motion to dismiss

26 Plaintiff's second amended complaint. See Defs' Mot., ECF No. 26.

                                    1

1  For the reasons provided below, the court denies Defendants' motion

2  to dismiss.

3                            **I.  BACKGROUND**

4  **A. Plaintiff's Complaint**[1]

5       Within the last year and a half, Plaintiff Liliana Cardenas

6  saw Defendants' representations by reading the front, back, and

7  sides of the Osteo Bi-Flex Regular Strength label at a Rite Aid

8  store in Roseville, California.  Pl's Second Am. Compl., ECF No.

9  25, at 4.  Plaintiff Cardenas "relied on every single one of

10 Defendants' renewal and rejuvenation representations" and purchased

11 the Osteo Bi-Flex product "to relieve her joint pain." <u>Id.</u> The

12 Osteo Bi-Flex Regular Strength that Plaintiff purchased and took

13 as directed did not help to promote mobility, renew cartilage,

14 maintain healthy connective tissue, or improve joint comfort, as

15 represented. <u>Id.</u> As a result, Plaintiff suffered injury in fact

16 and lost money. <u>Id.</u>

17      Since 1996, Defendants have developed, manufactured, marketed,

18 distributed, and sold a line of joint supplements under the Osteo

19 Bi-Flex brand name, including: (1) Osteo Bi-Flex One Per Day; (2)

20 Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength;

21 (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex

22 MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular

23

24      [1]  These facts are taken from the allegations in the
    Plaintiffs' Second Amended Complaint, ECF No. 25, unless otherwise
25  specified.  The allegations are taken as true for purposes of this
    motion only.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct.
26  2197, 167 L.Ed.2d 1081 (2007).

1 Strength; and (8) Osteo Bi-Flex Advanced.  Id. at 5.

2    The Osteo Bi-Flex products are sold in a number of major food,

3 drug, and mass retail outlet stores in California, including Wal-

4 Mart, Costco Wholesale, Sam's Club, Rite-Aid, Target, and

5 Walgreens.  Id.  The Osteo Bi-Flex products are available in 30,

6 75, 80, 120, and 150 count bottles, retailing for approximately

7 $19.99 to $44.99.  Id.

8    According to Plaintiff, Defendants have consistently conveyed

9 the message to consumers throughout California that Osteo Bi-Flex

10 will help to "promote mobility," "renew cartilage," "maintain

11 healthy connective tissue," and improve joint comfort by taking the

12 recommended number of tablets each day.  Id. at 6.

13    According to Plaintiff, Defendants represent that the claimed

14 health benefits are achieved through the combination of ingredients

15 in the products.  Id.  The primary active ingredient--glucosamine

16 hydrochloride--is in all the Osteo Bi-Flex products and is an amino

17 sugar that the body produces and distributes in cartilage and other

18 connective tissue.  Id.  Plaintiff asserts that there is no

19 competent and reliable scientific evidence that taking

20 glucosamine--let alone through oral administration--results in the

21 body metabolizing it into something that helps to promote mobility,

22 renew cartilage, maintain healthy connective tissue or improve

23 joint comfort.  Id.  Clinical cause and effect studies have found

24 no causative link between glucosamine hydrochloride supplementation

25 and joint renewal or rejuvenation.  Id.

26    The Osteo Bi-Flex products also contain Defendants' 5-LOXIN

3

Advanced, which consists of a concentrated extract of <u>Boswellia</u>
<u>Serrata</u> ("AKBA").   Osteo Bi-Flex Regular Strength is the only
product without AKBA.   Although Defendants claim that AKBA results
in "improvement in joint comfort within 7 days," there is no
competent and reliable scientific evidence that taking AKBA--let
alone through oral administration--helps to "promote mobility,"
"renew cartilage," "maintain healthy connective tissue," or improve
joint comfort.   Clinical cause and effect studies have been unable
to confirm a cause and effect relationship between AKBA
supplementation and joint renewal or rejuvenation.

     The Osteo Bi-Flex products also contain lesser amounts of the
following other ingredients: chondroitin sulfate, which is in all
of the Osteo Bi-Flex products except for Osteo Bi-Flex One Per Day;
methylsulfonylmethane, which is in all of the products except for
Osteo Bi-Flex One Per Day and Osteo Bi-Flex Regular Strength;
hyaluronic acid, which is in all of the products except for Osteo
Bi-Flex Advanced, Osteo Bi-Flex One Per Day, and Osteo Bi-Flex
Regular Strength; and vitamin D, vitamin C, manganese, boron, and
collagen.   <u>Id.</u> at 7-8.   There is no competent and reliable
scientific evidence that taking chondroitin, methylsulfonylmethane,
hyaluronic acid, vitamin D, vitamin C, manganese, boron, or
collagen--let alone through oral administration--helps to "promote
mobility," "renew cartilage," "maintain healthy connective tissue,"
or improve joint comfort.   <u>Id.</u> Clinical cause and effect studies
have found no causative link between chondroitin,
methylsulfonylmethane, hyaluronic acid,  vitamin D, vitamin C,

1   manganese, boron, or collagen supplementation and joint renewal or

2   rejuvenation.  <u>Id.</u>

3       The packages for the Osteo Bi-Flex products reference two

4   studies supporting the Defendants' representation that the product

5   "shows improvement in joint comfort," but no information is

6   included to enable customers to locate and review the studies.  <u>Id.</u>

7   at 8.  Defendants do not have competent and reliable scientific

8   evidence that any of the ingredients in their Osteo Bi-Flex

9   products, when taken alone or in combination, are effective at

10   helping provide joint renewal or rejuvenation.  <u>Id.</u> at 10.

11   Numerous clinical studies have resulted in a finding of no efficacy

12   for the ingredients in the Osteo Bi-Flex products and the

13   prevention of joint degeneration or relief from joint discomfort.

14   <u>Id.</u>

15       As noted, plaintiff alleges violations of California's Unfair

16   Competition Law ("UCL"), Business & Professions Code § 17200, et

17   seq., and its Consumers Legal Remedies Act ("CLRA"), California

18   Civil Code § 1750, et seq., as well as breach of express warranty.

19   <u>Id.</u> at 14-18.  Plaintiff seeks, <u>inter alia</u>, compensatory damages,

20   restitution and disgorgement of Defendants' revenues, injunctive

21   relief, and statutory and punitive damages.  <u>Id.</u> at 18-19.

22   **B. Defendants' Motion to Dismiss**

23       Defendants make, <u>inter alia</u>, the following arguments.  As a

24   preliminary matter, Defendants argue that Plaintiff lacks standing

25   to pursue claims, including putative class claims, as to the Osteo

26   Bi-Flex products she did not purchase and advertising she did not

view.   See Defs' Mot., ECF No. 26, at 7-11.   Second, Defendants
argue that Plaintiff has failed to allege sufficient facts to
support any of her claims because: (1) Plaintiff must allege and
ultimately prove that the challenged marketing is *actually* false
or misleading, and claims that the representation merely lacks
substantiation are insufficient, id. at 11-15; and (2) Plaintiff
makes conclusory and unspecified allegations regarding clinical
cause and effect studies, which are insufficient to show what is
specifically false or misleading about Defendants' representations,
why those representations are false, and what facts Defendants were
purportedly required to disclose, as required by Federal Rules of
Civil Procedure 8 and 9(b), id. at 15-18.   Finally, Defendants
request that the case be dismissed with prejudice because
"Plaintiff has already amended her complaint twice, and the claims
remain fundamentally defective."[2]   Id. at 20.

    In opposing Defendants' motion to dismiss, Plaintiff argues,
inter alia, that: (1) Plaintiff has standing to assert claims based
on the advertised representations pertaining to all of the Osteo
Bi-Flex products and Defendants' argument that Plaintiff lacks

─────────────

    [2] Plaintiff filed her initial complaint on June 14, 2011.
See Pl's Compl., ECF No. 1.  On July 5, 2011, before the Defendants
responded to Plaintiff's complaint, the parties stipulated that
Plaintiff would file a First Amended Complaint, and that Defendants
would be given an extension of time to file a response to the First
Amended Complaint.   See Stip. & Order, ECF No. 8.  On July 25,
2011, Plaintiff filed her First Amended Complaint.   See Pl's First
Am. Compl., ECF No. 10.  On August 24, 2011, Defendants filed a
motion to dismiss Plaintiff's first amended complaint.   See Defs'
Mot., ECF No. 19.  In response to Defendants' motion to dismiss,
Plaintiff filed the second amended complaint currently at issue.
See Pl's Second Am. Compl., ECF No. 25.

standing "is a premature and erroneous Rule 23 typicality argument, made under the guise of a standing argument," <u>see</u> Pl's Opp'n, ECF No. 29, at 5-9; (2) Defendants are improperly characterizing Plaintiff's claims as "lack of substantiation" or "nondisclosure" claims, when Plaintiff, in fact, is alleging claims for false and deceptive advertising, <u>id.</u> at 9-10; (3) even if Plaintiff's claims may be characterized as lack of substantiation claims, it remains "actionable conduct when a manufacturer makes false and misleading health benefit claims about a product without having competent scientific proof supporting those claims," <u>id.</u> at 10-11; (4) Plaintiff's UCL and CLRA claims are not predicated on common law fraud, and thus, Rule 8(a) (as opposed to Rule 9(b)) pleading standards apply and Plaintiff has satisfied those standards, <u>id.</u> at 11-13; and (5) even if the court determines that Plaintiff's complaint does "sound in fraud," Plaintiff has satisfied Rule 9(b) pleading requirements, <u>id.</u> at 14-15.

## II. STANDARDS FOR A MOTION TO DISMISS

**A. Dismissal of claims governed by Federal Rule of Civil Procedure 8(a)**

A Federal Rule of Civil Procedure 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Federal Rule of Civil Procedure 8, although claims that are "grounded in fraud" or "sound in fraud" must meet the requirements provided by Federal Rule of Civil Procedure 9(b). <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103-04 (9th Cir.

7

2003).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).   The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).   "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 679. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss.   The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[3]

---

[3] As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

1    "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not
2    refer to the likelihood that a pleader will succeed in proving the
3    allegations.   Instead, it refers to whether the non-conclusory
4    factual allegations, when assumed to be true, "allow[] the court
5    to draw the reasonable inference that the defendant is liable for
6    the   misconduct   alleged."    <u>Iqbal</u>,   556   U.S.   at   678.    "The
7    plausibility standard is not akin to a 'probability requirement,'
8    but it asks for more than a sheer possibility that a defendant has
9    acted unlawfully."   <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556).   A
10   complaint may fail to show a right to relief either by lacking a
11   cognizable legal theory or by lacking sufficient facts alleged
12   under a cognizable legal theory.   <u>Balistreri v. Pacifica Police</u>
13   <u>Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).
14   **B. Dismissal of Claims Governed by Federal Rule of Civil**
15   **Procedure 9(b)**
16       A Rule 12(b)(6) motion to dismiss may also challenge a
17   complaint's compliance with Federal Rule of Civil Procedure 9(b).
18   <u>See</u> <u>Vess</u>, 317 F.3d at 1107.   This rule provides that "In alleging
19   fraud or mistake, a party must state with particularity the
20   circumstances constituting fraud or mistake.   Malice, intent,
21   knowledge, and other conditions of a person's mind may be alleged
22   generally."   Fed.R.Civ.P. 9(b).   These circumstances include the
23   "time, place, and specific content of the false representations as
24   well as the identities of the parties to the misrepresentations."
25   <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (quoting
26   <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004)).

1   Rule 9(b) requires fraud claims to be specific enough to give

2   defendants notice of the particular misconduct which is alleged to

3   constitute the fraud charged, so that they can defend against the

4   charge and not just deny that they have done anything wrong.  <u>Id.</u>

5   (citing <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir.

6   2001).  That is, the plaintiff must specifically set forth what is

7   false or misleading about a statement, and why it is false.  <u>Vess</u>,

8   317 F.3d at 1106 (citing <u>Decker v. GlenFed, Inc.</u>, 42 F.3d 1541,

9   1548 (9th Cir. 1994)).

10                          **III. ANALYSIS**

11  **A. Osteo Bi-Flex Product Packaging**

12         When ruling on a motion to dismiss, the court may consider a

13  variety of documents in addition to the complaint.  For example,

14  the court may consider documents attached to the complaint.

15  <u>Durning v. First Boston, Corp.</u>, 815 F.2d 1265, 1267 (9th Cir.

16  1987), *cert. denied*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358

17  (1987).  The court may also consider "documents whose contents are

18  alleged in a complaint and whose authenticity no party questions,

19  but which are not physically attached to the pleading."  <u>Branch v.</u>

20  <u>Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994), *cert. denied*, 512 U.S.

21  1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994), *overruled on other*

22  *grounds*, <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1121

23  (9th Cir. 2002).  Attached to their motion to dismiss, Defendants

24  have included copies of product packaging for the eight Osteo Bi-

25  Flex products currently at issue in this dispute.  Because the

26  packaging serves as a basis for Plaintiff's allegations and

                                   10

1   Plaintiff does not contest their authenticity, the court here

2   considers the Osteo Bi-Flex product packaging in ruling on

3   Defendants' motion to dismiss. <u>See</u> Defs' Mot., ECF No. 26, Exs.

4   A-H.

5   **B. Standing**

6       To establish Article III standing, a plaintiff must have an

7   injury in fact, which is traceable to the defendant's acts and

8   redressable by a court decision.   <u>See</u> <u>Lujan v. Defenders of</u>

9   <u>Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 110 L.Ed.2d 351

10  (1992).   Injury in fact results from the invasion of a legally

11  protected interested which is concrete and particularized, as well

12  as actual or imminent.   <u>Id.</u> at 560 (citations omitted).   In a class

13  action, standing is satisfied if "at least one named plaintiff

14  meets the requirements." <u>Bates v. UPS</u>, 511 F.3d 974, 985 (9th Cir.

15  2007).

16      Here, Plaintiff alleged that she read the front, back, and

17  sides of the Osteo Bi-Flex Regular Strength label at a Rite Aid

18  store in Roseville, California, and lost money on the ineffective

19  Osteo Bi-Flex product that she would not have purchased but for the

20  representations thereon.   Plaintiff seeks, among other remedies,

21  compensatory damages.   These allegations constitute injury in fact

22  and suffice to establish that the Plaintiff has Article III

23  standing, at least as to the Osteo Bi-Flex Regular Strength product

24  that Plaintiff purchased and the representations on the packaging

25  of that product upon which she relied.

26      A plaintiff alleging a UCL claim must satisfy both Article III

11

1  standing requirements and UCL standing requirements.  See Birdsong

2  v. Apple, Inc., 590 F.3d 955, 960 n.4 (9th Cir. 2009).  A UCL

3  plaintiff with standing is a person who has (1) suffered injury in

4  fact and (2) lost money or property as a result of the unfair

5  competition.  Degelmann v. Advanced Medical Optics, Inc., 659 F.3d

6  835, 839 (9th Cir. 2011) (citing Cal. Bus. & Prof. Code § 17204).

7  That is, UCL plaintiffs are required to show that they have lost

8  money or property sufficient to constitute an "injury in fact"

9  under Article III of the Constitution.  Id. (citing Rubio v.

10  Capital One Bank, 613 F.3d 1195, 1203-04 (9th Cir. 2010); Birdsong,

11  590 F.3d at 959-60).  Thus, a UCL plaintiff must have Article III

12  standing in the form of economic injury.  In the instant case,

13  Plaintiff's allegation that she lost money on the ineffective Osteo

14  Bi-Flex product is sufficient to meet the standing requirement of

15  economic injury under the UCL, as to the Osteo Bi-Flex Regular

16  Strength product that she purchased.

17       Under the CLRA, an action may be brought by: "Any consumer who

18  suffers any damage as a result of the use or employment by any

19  person of a method, act, or practice declared to be unlawful by

20  Section 1770 . . . . " Cal. Civ. Code § 1780(a).  In order to have

21  standing, a plaintiff must allege that he or she was damaged by an

22  alleged unlawful practice.  Johns v. Bayer Corp., No. 09-1935, 2010

23  WL 476688, at *4 (S.D.Cal. Feb. 9, 2010) (citing Meyer v. Sprint

24  Spectrum L.P., 45 Cal.4th 634, 638, 88 Cal.Rptr.3d 859, 200 P.3d

25  295 (2009)).  Again, Plaintiff's allegation that she lost money due

26  to Defendants' unlawful representations is sufficient to establish

1   Plaintiff's standing to bring a claim under the CLRA for any

2   misrepresentations she relied upon relating to the Osteo Bi-Flex

3   Regular Strength product that she purchased.

4        It is less clear whether Plaintiff has standing to bring

5   claims under the UCL and the CLRA as to the Osteo Bi-Flex products

6   that she did not purchase and the advertising she did not view.

7        The court in <u>Bayer Corp.</u> provided, in dicta, that a plaintiff

8   "cannot expand the scope of his claims to include a product he did

9   not purchase or advertisements relating to a product that he did

10  not rely upon." <u>Bayer Corp.</u>, 2010 WL 476688, at *5. Some district

11  courts in the Ninth Circuit have followed this view. <u>See</u>, <u>e.g.</u>,

12  <u>Carrea v. Dreyer's Grand Ice Cream, Inc.</u>, No. 3:10-cv-01044-JSW,

13  2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (holding that

14  plaintiff has standing to bring UCL and CLRA claims for the

15  Drumstick ice cream products purchased, but dismissing plaintiff's

16  claims for the Dibs ice cream product, which plaintiff never

17  alleged he purchased or suffered a loss), *aff'd*, No. 11-15263, 2012

18  WL 1131526 (9th Cir. April 5, 2012) (unpublished) (declining to

19  address the district court's standing determination); <u>Mlejnecky v.</u>

20  <u>Olympus Imaging Am. Inc.</u>, No. 2:10-cv-2630, 2011 WL 1497096, at *4

21  (E.D.Cal. April 19, 2011) (Mendez, J.) (dismissing plaintiff's CLRA

22  and UCL claims relating to a camera model that has the "same

23  underlying defects" and used the same advertisements as the model

24  she purchased, but for which she did not allege any economic

25  injury).

26       Other recent court decisions, however, have applied a

13

1   different approach when facing, in a class action, a named
2   plaintiff's assertion of claims related to products that she did
3   not buy.  For example, in Carideo v. Dell, Inc., the court upheld
4   claims by the named plaintiffs for computer models that they had
5   not purchased, but that were subject to the "same core factual
6   allegations and causes of action."  706 F.Supp.2d 1122, 1134 (W.D.
7   Wash. 2010).  And in Hewlett-Packard v. Superior Ct., the court
8   upheld class certification for UCL, CLRA, express warranty, and
9   unjust enrichment claims relating to display failures in several
10  models, even though the named plaintiff only purchased one of those
11  models.  167 Cal.App.4th 87, 89-92, 83 Cal.Rptr.3d 836 (2008).
12  While Carideo can be distinguished from the issues presented in
13  this case because it does not address standing requirements as
14  related to California law, and Hewlett-Packard can be distinguished
15  from the issues here presented because the court in Hewlett-
16  Packard was not analyzing standing issues, it is more difficult to
17  dismiss or distinguish the court's holding in Bruno v. Quten
18  Research Inst., LLC, 8:11-cv-00173, 2011 WL 5592880, at *3-4 (C.D.
19  Cal. Nov. 14, 2011).

20      Similar to the instant case, in Bruno, the plaintiff filed a
21  class action against the manufacturer and marketer of supplements
22  alleging misrepresentations in violation of, inter alia,
23  California's UCL and CLRA.  In considering whether the plaintiff
24  in Bruno had standing to bring claims arising from the defendants'
25  gelcap product, when the plaintiff had only purchased the
26  defendants' liquid product, the court noted that "treatises and the

14

1   vast majority of persuasive authority indicate that . . . the issue
2   of whether a class representative may be allowed to present claims
3   on behalf of others who have similar, but not identical, interests
4   depends not on standing, but on an assessment of typicality and
5   adequacy of representation."   Id. at *3 (citing Greenwood v.
6   CompuCredit Corp., No. 4:08-cv-04878, 2010 WL 4807095, at *3 (N.D.
7   Cal. Nov. 19, 2010); Arevalo v. Bank of Am. Corp., —— F.Supp.2d --,
8   2011 WL 1195973, at *4 (N.D. Cal. Mar. 29, 2011); Fallick v.
9   Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998)
10  (holding that, because plaintiff had standing to sue for injury
11  arising from his own benefit plan, his ability to represent class
12  members with different benefit plans should be analyzed under Rule
13  23, not standing); 7AA Wright et al., Federal Practice and
14  Procedure (3d 2005) § 1785.1).

15      The court here finds the reasoning of Bruno more persuasive
16  than the reasoning provided by the dicta of Bayer Corp. and its
17  progeny.  Thus, the court determines that Plaintiff has standing
18  to assert her UCL and CLRA claims based on her purchase of Osteo
19  Bi-Flex Regular Strength and the product's more general
20  representations that its line of Osteo Bi-Flex products, which
21  ostensibly share many similarities in ingredients, "improve
22  mobility," "improve joint comfort," and "support[] renewal of
23  cartilage."  The court will analyze solely under Rule 23 whether
24  Plaintiff may be allowed to present claims on behalf of purchasers
25  of the remaining Osteo Bi-Flex products.

26

**C. Applicability of Federal Rule of Civil Procedure 9(b)**

Defendants argue that Plaintiff's claims sound in fraud and are, therefore, subject to the particularized pleading requirements of Rule 9(b).

The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing <u>Vess</u>, 317 F.3d at 1102-05).  While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct.  <u>Id.</u> (citing <u>Vess</u>, 317 F.3d at 1103).  A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim, in which event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading as a whole must satisfy the particularity requirement of Rule 9(b).  <u>Id.</u> (citing <u>Vess</u>, 317 F.3d at 1103-04).

To determine if the elements of fraud have been pleaded to state a cause of action, courts look to state law.  <u>Kearns</u>, 567 F.3d at 1126 (citing <u>Vess</u>, 317 F.3d at 1105-06).  The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  <u>Id.</u> (citing <u>Engalla v. Permanente Med. Group, Inc.</u>, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (Cal. 1997)).

1    If the claim is grounded in fraud, the pleading of that claim

2   as a whole must satisfy the particularity requirement of Rule 9(b).

3   Kearns, 567 F.3d at 1127 (citing Vess, 317 F.3d at 1103-04).

4    Plaintiff argues that her action does not sound in fraud, but

5   instead, alleges claims of false and deceptive advertising.

6   However, Plaintiff specifically asserts the elements of a cause of

7   action for fraud in her CLRA claim.  Specifically, in her CLRA

8   claim, Plaintiff alleges that Defendants "fail[ed] to disclose

9   material facts on the Osteo Bi-Flex product labels and packaging"

10  (nondisclosure), "when they knew, or should have known, that the

11  representations were unsubstantiated" (scienter).  Pl's Second Am.

12  Compl., ECF No. 25, at 17, ¶ 59.  Plaintiff also asserts that she

13  "relied on every single one of Defendants' renewal and rejuvenation

14  representations" (justifiable reliance), and that she "suffered

15  injury in fact and lost money" (resulting damage).  Id. at 4, ¶ 8.

16  Because Plaintiff alleges each of the elements of an action for

17  fraud in her CLRA claim, the pleading of that claim, as a whole,

18  must satisfy the particularity requirement of Rule 9(b).

19   Plaintiff does not, however, allege knowledge of falsity, or

20  scienter, as part of her UCL claim.  Plaintiff's UCL claim

21  therefore does not "sound in fraud" and Rule 9(b) applies only

22  insofar as Plaintiff makes specific averments of fraud in her UCL

23  claim.  See Vess, 317 F.3d at 1105 ("[I]n a case where fraud is not

24  an essential element of a claim, only allegations . . . of

25  fraudulent conduct must satisfy the heightened pleading

26  requirements of Rule 9(b).  Allegations of non-fraudulent conduct

17

1 | need satisfy only the ordinary notice pleading standards of Rule
2 | 8(a).".

3     In the complaint as pled, however, it is difficult to
4 distinguish between those averments in Plaintiff's UCL claim that
5 are based on fraud, and those averments that are based on non-
6 fraudulent conduct.[4]  As part of Plaintiff's UCL claim, Plaintiff
7 alleges that she and other class members "lost money as a result
8 of these unlawful, unfair, and *fraudulent* practices."  Pl's Second
9 Am. Compl., ECF No. 25, at 15, ¶ 51 (emphasis added).  Plaintiff
10 characterizes the Defendants' representations as "fraudulent,"
11 apparently in reference to Defendants' false advertising generally,
12 and not related to any of Defendants' statements in particular.
13 Because the alleged fraudulence of Defendants' advertising is
14 inseparable from any other averments made as part of Plaintiff's
15 UCL claim, the court determines that Plaintiff's UCL claim, as a
16 whole, must meet the pleading standards of Rule 9(b).

**D. Sufficiency of Plaintiff's Complaint Under Rule 9(b).**

18     The court here determines that Plaintiff's complaint meets the
19 pleading standards of Federal Rule of Civil Procedure 9(b).  When
20 taking Plaintiff's factual allegations as true and construing them
21 in the light most favorable to Plaintiff, Plaintiff's allegations
22 of the falsity of the Osteo Bi-Flex representations are sufficient
23 to survive Defendants' motion to dismiss.

---

25    [4] The court notes that not all claims of false advertising are
necessarily grounded in fraud.  See Fraker v. Bayer Corp., No.
26 1:08-cv-01564, 2009 WL 5865687, at *9 (E.D.Cal. Oct. 6, 2009).

1    Plaintiff argues, and the court agrees, that the gravamen of
2    her complaint asserts that "it is actionable conduct when a
3    manufacturer makes false and misleading health benefit claims about
4    a product without having competent scientific proof supporting
5    those claims."  Pl's Opp'n, ECF No. 29, at 11.

6    Pursuant to Section 17500 of the California Business and
7    Professions Code, it is unlawful to make and disseminate any
8    statement that is "untrue or misleading, and which is known, or by
9    the exercise of reasonable care should be known, to be untrue or
10   misleading."  Cal. Bus. & Prof. § 17500.  A statement is false or
11   misleading if members of the public are likely to be deceived.
12   Fraker v. Bayer Corp., No. 1:08-cv-01564, 2009 WL 5865687, at *7
13   (E.D.Cal. Oct. 6, 2009) (citing McCann v. Lucky Money, Inc., 129
14   Cal.App.4th 1382, 1388, 29 Cal.Rptr.3d 437 (4th Dist. 2005)
15   (internal citations omitted)).  A "reasonable consumer" standard
16   applies when determining whether a given claim is misleading or
17   deceptive.  Id. at *6.  A "reasonable consumer" is "the ordinary
18   consumer acting reasonably under the circumstances," and "is not
19   versed in the art of inspecting and judging a product, in the
20   process of its preparation or manufacture."  Id.

21   Plaintiff refers to "clinical cause and effect studies" that
22   "have found no causative link" between the individual ingredients
23   contained in the Osteo Bi-Flex products and the benefits purported
24   thereon.

25   Defendants' representations related to improved joint comfort,
26   joint lubrication, and other joint benefits, appear to be based,

19

1   at least in part, on the asserted efficacy of individual

2   ingredients in their formulations in achieving joint benefits.

3        For example, the packaging for Osteo Bi-Flex One Per Day,

4   Osteo Bi-Flex Double Strength, Osteo Bi-Flex Triple Strength, Osteo

5   Bi-Flex Triple Strength with Vitamin D3, Osteo Bi-Flex Energy

6   Formula, and Osteo Bi-Flex Advanced all indicate that an active

7   ingredient in their formulations is "5-LOXIN Advanced," which,

8   Defendants represent, "contains high concentrations of AKBA, which

9   is an important Boswellic Acid for helping with joint flare-ups."

10  See, e.g., Defs' Mot., ECF No. 26, Exs. A-D, F.  If Plaintiff's

11  assertions are true, and "[c]linical cause and effect studies have

12  been unable to confirm a cause and effect relationship between AKBA

13  supplementation and joint renewal or rejuvenation," ECF No. 25, at

14  6-7, then it stands to reason that Defendants' representations that

15  AKBA "help[s] with joint flare-ups" are actually false.  Because

16  Defendants bolster their overarching claims of joint benefits by

17  referring to the importance and efficacy of a particular ingredient

18  which, if Plaintiff is to be believed, has no actual joint

19  benefits, then Defendants' overarching claims are most likely false

20  as well.  Thus, Plaintiff's cited clinical cause and effect studies

21  regarding AKBA sufficiently provide Defendants notice of the

22  parameters of their allegedly fraudulent conduct; based on the

23  Plaintiff's allegations, the Defendants can adequately prepare a

24  defense against the charge and not merely deny that they have done

25  anything wrong.

26       Similarly, apparently as a basis for its overarching claims

20

1    that Osteo Bi-Flex Regular Strength "improves mobility," "improves

2    joint comfort," and "supports renewal of cartilage," the packaging

3    for the regular strength product asserts that "[g]lucosamine . .

4    . helps to maintain the structural integrity of joints and

5    connective tissues," and that "[c]hondroitin . . . helps to

6    lubricate and cushion joints while supporting the renewal of

7    cartilage."  <u>See</u> Defs' Mot., ECF No. 26, Ex. H.  If, in fact,

8    clinical cause and effect studies have found no causative link

9    between glucosamine hydrochloride supplementation and joint renewal

10   or rejuvenation, nor have clinical cause and effect studies found

11   a causative link between chondroitin supplementation and joint

12   renewal or rejuvenation, then Defendants' assertions regarding the

13   benefits of glucosamine and chondroitin are most likely false.

14   Because the purported joint benefits of the regular strength

15   product are based on Defendants' assertions of the efficacy of the

16   particular ingredients glucosamine and chondroitin, it is

17   reasonable to infer that the regular strength product's asserted

18   overarching benefits of improved mobility, improved joint comfort,

19   and renewal of cartilage, are also false.  Thus, the court finds

20   that Plaintiff's cited clinical cause and effect studies are

21   sufficiently specific to provide Defendants notice of what is

22   allegedly false or misleading about the Osteo Bi-Flex

23   representations, and why those representations are alleged to be

24   false, as required by Rule 9(b).

25   ////

26   ////

1

**IV. CONCLUSION**

2        For the foregoing reasons, Defendants' motion to dismiss, ECF

3  No. 26, is DENIED.

4        IT IS SO ORDERED.

5        DATED:  May 3, 2012.

6

7

8

9                    LAWRENCE K. KARLTON
                     SENIOR JUDGE
10                   UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26