1  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2  ELAINE A. RYAN (*Admitted Pro Hac Vice*)
   PATRICIA N. SYVERSON (203111)
3  LINDSEY M. GOMEZ-GRAY (*Admitted Pro Hac Vice*)
   2325 E. Camelback Road, #300
4  Phoenix, AZ  85016
   eryan@bffb.com
5  psyverson@bffb.com
   lgomez-gray@bffb.com
6  Telephone:     (602) 274-1100

7  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
8  Manfred Muecke (222893)
   600 W. Broadway, Suite 900
9  San Diego, California 92101
   mmuecke@bffb.com
10 Telephone:  (619) 756-7748

11 [Additional Counsel Located on Signature Page]

12 Attorneys for Plaintiffs

13                    UNITED STATES DISTRICT COURT

14                  EASTERN DISTRICT OF CALIFORNIA

15 | LILIANA CARDENAS, an Individual, and | Case No.: 2:11-CV-01615-LKK-CKD |
   | FRANCISCO PADILLA, an Individual, On | |
16 | Behalf of Themselves and All Others | **CLASS ACTION** |
   | Similarly Situated, | |
17 | | |
   |              Plaintiffs, | **NOTICE OF MOTION AND MOTION** |
18 | | **FOR CLASS CERTIFICATION;** |
   |       v. | **PLAINTIFFS' MEMORANDUM OF** |
19 | | **POINTS AND AUTHORITIES IN** |
   | NBTY, INC., a Delaware corporation and | **SUPPORT OF MOTION FOR CLASS** |
20 | REXALL SUNDOWN, INC., a Florida | **CERTIFICATION (REDACTED)** |
   | corporation, | |
21 | | Date:  April 8, 2013 |
   |              Defendants. | Time:  10:00 a.m. |
22 | | Courtroom:   Sacramento Div., Courtroom 4 |

23

24

25

26

27

28

i

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE, that in accordance with Rule 23, Federal Rules of Civil Procedure, Plaintiffs Liliana Cardenas and Francisco Padilla ("Plaintiffs") hereby move for an order certifying the following Class(s) and appointing Plaintiffs as Class representatives:

**Unfair Competition Law ("UCL") California-Only Class:**
All consumers in California who, within the applicable statute of limitations, purchased NBTY's Osteo Bi-Flex Products.

**Consumer Legal Remedies Act ("CLRA") California-Only Class:**
All consumers in California who, within the applicable statute of limitations, purchased NBTY's Osteo Bi-Flex Products.

**Illinois Consumer Fraud Act ("ICFA") Illinois-Only Class:**
All consumers in Illinois who, within the applicable statute of limitations, purchased NBTY's Osteo Bi-Flex Products.

**Unfair Competition Law ("UCL") 17-State Class:**
All consumers in California, Arkansas, Connecticut, Delaware, Florida, Hawaii, Idaho, Illinois, Kansas, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Vermont and Washington who, within the applicable statute of limitations of their respective states, purchased NBTY's Osteo Bi-Flex Products.

Plaintiffs seek certification of their claims under the Unfair Competition Law, Business and Professions Code §§17200, *et seq.* ("UCL"), the Consumer Legal Remedies Act, Civil Code §1750, *et seq.* ("CLRA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 502/1, *et seq.* As set forth in the accompanying memorandum, the proposed Class(es) satisfy all requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, thereby warranting class certification. Further, Plaintiffs meet all the requirements for appointment as Class representatives.

Additionally, Plaintiffs move for an order appointing the law firms of Bonnett, Fairbourn, Friedman & Balint, P.C., and Stewart M. Weltman, LLC (Of Counsel – Levin, Fishbein, Sedran & Berman) as Class Counsel in this action. As set forth in the accompanying memorandum and the Declaration of Patricia N. Syverson, Plaintiffs' counsel meet each of the requirements of Rule 23(g).

This motion is based upon this notice of motion, the accompanying memorandum of law, the evidentiary submissions, including the Declaration of Patricia N. Syverson, and such other evidence and argument as may be presented at or before the hearing of this motion.

2

1 Dated:  January 28, 2013

2                                    BONNETT, FAIRBOURN, FRIEDMAN
3                                       & BALINT, P.C.

4                                       /s/ Patricia N. Syverson
                                      Elaine A. Ryan
5                                      Patricia N. Syverson (203111)
                                      Lindsey M. Gomez-Gray
6                                      2325 E. Camelback Road, Suite 300
                                      Phoenix, AZ 85016
7                                      eryan@bffb.com
                                      psyverson@bffb.com
8                                      lgomez-gray@bffb.com
                                      Telephone:  (602) 274-1100

9                                      BONNETT, FAIRBOURN, FRIEDMAN
10                                     & BALINT, P.C.
                                      Manfred Muecke (222893)
11                                     600 W. Broadway, Suite 900
                                      San Diego, California 92101
12                                     mmuecke@bffb.com
                                      Telephone:  (619) 756-7748

13                                     STEWART M. WELTMAN LLC
14                                     Stewart M. Weltman
                                      122 S. Michigan Avenue, Suite 1850
15                                     Chicago, IL 60603
                                      sweltman@weltmanlawfirm.com
16                                     Telephone:  (312) 588-5033
                                      (Of Counsel Levin Fishbein Sedran & Berman)

17                                     LEVIN FISHBEIN SEDRAN & BERMAN
18                                     Howard J. Sedran
                                      510 Walnut Street
19                                     Philadelphia, Pennsylvania 19106
                                      hsedran@lfsblaw.com
20                                     T: (215) 592-1500

21                                     Attorneys for Plaintiffs and the Class

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ................................................................................................. 1

II.   COMMON EVIDENCE WILL BE USED TO PROVE CLASS CLAIMS ............................ 4

    A.   Every Bottle Uniformly and Exclusively States Osteo Bi-Flex Provides
        Joint Health Benefits ................................................................................. 4

    B.   Osteo Bi-Flex Does Not Provide Joint Health Benefits or 7 Day Relief ..................... 6

    C.   Class Certification Is the Only Means For Consumers To Put A Stop
        to NBTY's Promotion of Its Deceptive Joint Health Benefit and 7 Day
        Relief Claims ....................................................................................... 8

    D.   NBTY Profited From its Wrongful Conduct ..................................................... 9

III.  PROPOSED CLASS DEFINITIONS .................................................................. 9

IV.   THIS CASE SATISFIES THE REQUIREMENTS OF RULE 23 .............................. 10

    A.   Plaintiffs Satisfy the Rule 23(a) Prerequisites .............................................. 11

        1.   Numerosity Is Satisfied ................................................................ 11

        2.   Commonality Is Satisfied .............................................................. 12

        3.   Typicality Is Satisfied .................................................................. 13

        4.   Adequacy Of Representation ......................................................... 14

    B.   The Requirements Of Rule 23(b)(2) Are Satisfied ........................................... 14

        a.   Plaintiffs And The Class Complain Of Standardized Conduct Applicable
            To The Entire Class ............................................................ 14

        b.   Plaintiffs' Primary Goal Is Injunctive Relief And An Order Enjoining
            Further Mislabeling and Marketing of Osteo Bi-Flex ................................ 15

    C.   The Requirements Of Rule 23(b)(3) Are Satisfied ........................................... 16

        1.   Predominance Is Satisfied ............................................................. 17

            a.   Common Issues Can Be Proven on a Classwide Basis .............................. 17

            b.   California Law Can Be Applied to Plaintiff's California-Only
               UCL and CLRA Classes and the UCL Multi-State Class ........................... 18

            c.   Reliance and Causation Issues Do Not Defeat Predominance ..................... 19

            d.   Relief Can Be Determined On A Classwide Basis ................................... 22

i

2.      A Class Action Is Superior to Other Available Methods of Adjudicating the Issues Raised ................................................................................................... 23

V.      CONCLUSION ................................................................................................... 24

ii

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Allen v. Hylands Inc.*
  No. CV 12-01150, 2012 WL 1656750 (C.D. Cal. May 2, 2012) ..................................... 19

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) .................................................................... 10, 16, 17

*Bank of the West v. Super. Ct.*
  2 Cal. 4th 1254 (1992) ................................................................. 20

*Blackie v. Barack*
  524 F.2d 891 (9th Cir. 1975) .......................................................... 23

*Bruno v. Eckhart Corp.*
  280 F.R.D. 540 (C.D. Cal. 2012) ..................................................... 18

*Churchhill Village, L.L.C.*
  169 F. Supp. 2d 1119 (N.D. Cal. 2010) ............................................. 10

*Colgan v. Leatherman Tool Group, Inc.*
  135 Cal. App. 4th 663 (2006) ...................................................... 20, 22

*Connick v. Suzuki Motor Co., Ltd*
  675 N.E.2d 584 (Ill. 1996) ........................................................... 20

*Countrywide Fin. Corp. v. Bundy*
  187 Cal. App. 4th 234 (2010) ....................................................... 19

*Daar v. Yellow Cab Co.*
  67 Cal. 2d 695 (1967) ................................................................ 10

*Delarosa v. Boiron, Inc.*
  275 F.R.D. 582 (C.D. Cal. 2011) ........................................... 4, 11, 15, 16, 23

*Deposit Guar. Nat'l Bank v. Rope*
  445 U.S. 326, (1980) ................................................................. 23

*Dukes v. Wal-Mart, Inc.*
  474 F.3d 1214 (9th Cir. 2007) ....................................................... 13

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) .................................................................. 10

iii

*Engalla v. Permanente Medical Group, Inc.*
  15 Cal. 4th 951 (1997) ............................................................................................. 21

*Fine v. ConAgra Foods, Inc.*
  2010 U.S. Dist. LEXIS 101830 (C.D. Cal. Aug. 26, 2010) ............................................. 12

*Fitzpatrick v. Gen. Mills, Inc.*
  263 F.R.D. 687 (S.D. Fla. 2010) ................................................................................. 4

*Forcellati v. Hyland's Inc.*
  No. CV 12-1983, 2012 WL 2513481 (N.D. Cal. June 1, 2012) ...................................... 19

*FTC v. Figgie Int'l*
  994 F.2d 595 (9th Cir. 1993) .................................................................................... 22

*F.T.C. v. Pantron I Corp.*
  33 F.3d 1088 (9th Cir. 1994) ..................................................................................... 3

*Gartin v. S & M Nutec, LLC*
  245 F.R.D. 429 (C.D. Cal. 2007) ................................................................... 3, 18, 21

*Gen. Tel. Co. of Sw. v. Falcon*
  102 S.Ct. 2364 (1982) ............................................................................................. 12

*Gordon v. Boden*
  224 Ill. App. 3d 195 (1st Dist. 1991) ........................................................................... 4

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ........................................... 11, 13, 14, 16, 17, 23

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) .................................................................................... 13

*In re First Alliance Mortg. Co.*
  471 F.3d 977 (9th Cir. 2006) .................................................................................... 10

*In re Computer Memories Sec. Litig.*
  111 F.R.D. 675 (N.D. Cal. 1986) ............................................................................... 19

*In re POM Wonderful LLC Marketing and Sales Practices Litigation*
  No. ML 10–02199 DDP (RZx), 2012 WL 4490860
  (C.D. Cal. Sept. 28, 2012) ............................................................................... 21, 23

*In re Steroid Hormone Prod. Cases*
  181 Cal. App. 4th 145 (2010) ................................................................................... 20

*In re Tobacco II Cases*
  46 Cal. 4th 298 (2009) ........................................................................ 3, 18. 19, 20, 21

*In re Vioxx Class Cases*
    180 Cal. App. 4th 116 (2009) ....................................................................... 20

*Johns v. Bayer Corp.*
    280, F.R.D. 55 (S.D. Cal. 2012) ....................................................................... 4

*Johnson v. Gen. Mills, Inc.*
    275 F.R.D. 282 (C.D. Cal. 2011) ...................................................................... 4

*Keilholtz v. Lennox Health Prods., Inc.*
    268 F.R.D. 330 (N.D. Cal. 2010) ................................................................... 13

*Kwikset Corp. v. Super. Ct.*
    51 Cal. 4th 310 (2011) ....................................................................... 3, 18, 21

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496 (2003) ................................................................. 19, 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001) ...................................................................... 16

*Mass Mutual Life Ins. Co. v. Super. Ct.*
    97 Cal. App. 4th 1282 (2002) ................................................................. 20, 21

*Mazza v. Am. Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) ................................................................. 18, 19

*Molski v. Gleich*
    318 F.3d 937 (9th Cir. 2003) ................................................................. 15, 16

*Negrete v. Allianz Life Ins. Co.*
    CV 05-6838 CAS (MANx) (C.D. Cal.) ........................................................ 21

*Nelson v. Mead Johnson*
    270 F.R.D. 689 (S.D. Fla. 2010) ..................................................................... 4

*Norwest Mortg., Inc. v. Super. Ct.*
    72 Cal. App. 4th 214 (1999) ......................................................................... 10

*O'Donovan v. CashCall, Inc.*
    278 F.R.D. 479 (N.D. Cal. 2011) ................................................................. 18

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ..................................................................................... 18

*PJ's Concrete Pumping Service Inc. v. Nextel West Corp.*
    345 Ill. App. 3d, 992 (2nd Dist. 2004) .............................................. 3, 19, 20

*Reynoso v. South County Concepts*
   No. 07-373, 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007) ............................................... 11

*S37 Management, Inc. v. Advance Refrigeration Co.*
   961 N.E. 2d 6 (1st Dist. 2011) .................................................................................... 4

*Slaven v. BP Am., Inc.*
   190 F.R.D. 649 (C.D. Cal. 2000) ............................................................................... 11

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ................................................................................... 14

*State of California. v. Levi Strauss & Co.*
   41 Cal. 3d 460 (1986) ............................................................................................. 10

*Stearns v. Ticketmaster Corp*
   655 F.3d 1013 (9th Cir. 2011) ................................................................................. 20

*Sun Oil Co. v. Wortman*
   486 U.S. 717 (1988) ............................................................................................... 18

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union,
AFL-CIO v. ConocoPhillips Co.*
   593 F.3d 802 (9th Cir. 2010) ................................................................................... 10

*Valentino v. Carter-Wallace, Inc.*
   97 F.3d 1227 (9th Cir. 1996) ................................................................................... 23

*Vasquez v. Superior Court*
   4 Cal. 3d 800 (1971) ........................................................................................ 10, 23

*Wal-Mart Stores, Inc. v. Dukes*
   131 S.Ct. 2541 ...................................................................................................... 12

*Walters v. Reno*
   145 F.3d 1032 (9th Cir. 1998) ................................................................................. 15

*Weinstat v. Dentsply Intern., Inc.*
   180 Cal. App. 4th 1213, 1223 (2010) ...................................................................... 20

*Wiener v. Dannon Co., Inc.*
   255 F.R.D. 658 (C.D. Cal. 2009)...............................................4, 12, 13, 14, 15, 17, 22, 23

*Williams v. Gerber Food Prods. Co.*
   552 F.3d 934 (9th Cir. 2008) ................................................................................... 19

*Zinser v. Accufix Research Inst., Inc.*
   253 F.3d 1180 (9th Cir. 2001) ................................................................................. 23

**CODES**
Cal. Bus. & Prof. Code §17200 ..................................................................................... 2, 20
Cal. Bus. & Prof. Code §17203 ......................................................................................... 10
Cal. Civ. Code §1781 ......................................................................................................... 10
Consumers Legal Remedies Act Civil Code §1750 ....................................................... 1, 2

**RULES**
Fed. R. Civ. P. 23(a) ....................................................................................................... 9, 11
Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 11
Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 12
Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 13
Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 14
Fed. R. Civ. P. 23(b)(2) ............................................................................................. 9, 14, 15
Fed. R. Civ. P. 23(b)(3) ........................................................... 9, 15, 16, 17, 18, 23
Fed. R. Civ. P. 23(g) ....................................................................................................... 2, 14

**MISCELLANEOUS**
Illinois Consumer Fraud and Deceptive Business Practices Act ................................... 1, 9

Plaintiffs Liliana Cardenas and Francisco Padilla respectfully submit this memorandum in support of their motion to certify California-only Classes under California's Unfair Competition Law ("UCL"), Business and Professions Code §17200, *et seq.,* and Consumers Legal Remedies Act ("CLRA"), Civil Code §1750, *et seq.*, an Illinois-only Class under Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 502/1, *et seq.*, and a multi-state UCL Class against Defendants NBTY, Inc. and Rexall Sundown, Inc. (collectively, "NBTY").

## I.    INTRODUCTION

NBTY manufactures, distributes, markets and sells the eight-product Osteo Bi-Flex line of joint health dietary supplements[1] – the ███████████████████████ Declaration of Patricia N. Syverson ("Syverson Decl."), at Ex. 1 (REX4028-4046 at 4029).  The Osteo Bi-Flex Products are sold in virtually every major food, drug, mass and club retail outlet in the country and are targeted to consumers "███████████████████████████████████████████████████."  Syverson Decl., at Ex. 2 (REX4055-4179 at 4063).  Indicative of its intent to target osteoarthritis sufferers, every Product package bears the Arthritis Association logo and a statement that NBTY is a "proud sponsor of the Arthritis Association".  Syverson Decl., Ex. 3 (Product Labels (D.E. #19-1 to 19-8). NBTY prominently represents on all eight of its Product packages/labels that the glucosamine hydrochloride and chondroitin sulfate[2] in its Osteo Bi-Flex Products help "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort (the "joint health benefit representations") and, on all but one Osteo Bi-Flex Product, NBTY represents that consumers will "show improvement in joint comfort within 7 days" ("7 day relief representation").[3]  *Id.*  The Products are uniformly designed and marketed exclusively to provide joint health benefits; there are no other represented Product benefits.

NBTY's Osteo Bi-Flex Products do not provide the represented joint health benefits, let alone

---

[1] The Osteo Bi-Flex line includes: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced (collectively, "Osteo Bi-Flex" or the "Products").
[2] Osteo Bi-Flex One Per Day is the only product without chondroitin sulfate.
[3] Osteo Bi-Flex Regular Strength is the only product without AKBA.

in as little as 7 days.  As set forth in the Expert Report of Dr. Thomas Schnitzer, M.D. Ph.D., of Northwestern University Feinberg School of Medicine ("Schnitzer Report") (Syverson Decl., at Ex. 4), one of the foremost clinical experts in the area of joint and musculoskeletal health, the scientific evidence is that glucosamine hydrochloride and chondroitin sulfate have been proven ineffective for any joint health benefits, including those NBTY makes regarding its Osteo Bi-Flex Products.  Further, as set forth in Dr. Schnitzer's expert report, the existing credible scientific evidence also shows that NBTY's 7 day relief representation based on its purported proprietary "5-LOXIN Advanced" formula (a concentrated extract of *Boswellia Serrata* ("AKBA")) is false.

Based on the uniform, yet false, joint health benefit and 7 day relief representations, NBTY has defrauded and continues to defraud the public who are, at a minimum, necessarily exposed to these misrepresentations at the point-of-sale.  There is only one reason to buy any of the Osteo Bi-Flex Products – to receive some form of joint health benefit – and the scientific evidence is conclusive that the Osteo Bi-Flex Products provide no joint health benefits whatsoever.  Thus, Plaintiffs and every consumer who purchased the Products have suffered a common economic injury - they have paid for a Product that does not provide the represented joint health benefits or 7 day relief.

The issue presented by this Motion, however, is not whether NBTY's joint health benefit or 7 day relief representations are in fact deceptive (which are questions of fact to be resolved by the trier of fact), but whether there are common issues to be tried in this case that makes class certification appropriate.  The answer is a resounding "yes."  Throughout the Class period and to this day, NBTY's Products all contain the same two primary ingredients – glucosamine hydrochloride and chondroitin sulfate[4] – and all came and still come in packages that promise(d) the same joint health benefits and, all but one Product, now promises 7 day relief.

Plaintiffs will present scientific evidence that glucosamine hydrochloride and chondroitin sulfate do not provide the joint health benefits NBTY represents.  This evidence will take the form of: (1) the actual clinical studies that conclusively demonstrate that neither ingredient provides the joint health benefits NBTY represents; (2) internal documents contemporaneously prepared by NBTY

---

[4] Osteo Bi-Flex One Per Day is the only product without chondroitin sulfate.

reflecting its awareness of these studies and their implications; and (3) expert testimony (*e.g.*, the report and the testimony of Dr. Schnitzer based upon that report) that glucosamine hydrochloride and chondroitin sulfate do not provide the joint health benefits NBTY represents, nor do the other ingredients in the Products.  This issue, whether the Osteo Bi-Flex Products provide the represented joint health benefits and 7 day relief, present common, predominant questions of fact, which by their very nature are equally applicable to every Class member and susceptible to classwide proof.

As a matter of law, the misleading nature of NBTY's representations is readily established on a classwide basis because this question is determined based upon an objective standard - the "likelihood to deceive a reasonable person."  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) ("*Tobacco II*") (CLRA and UCL claims); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 332-33 (2011) (same); *PJ's Concrete Pumping Serv. Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1002 (2nd Dist. 2004) (under ICFA multi-state class certification appropriate where the misrepresentation was uniform and "has at least the potential to deceive customers").  Label representations are presumed material.  *See  F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994) ("Express product claims are presumed to be material…");[5] *see also Kwikset,* 51 Cal. 4th at 328.  A presumption particularly applicable here given the Products' uniform purpose to provide joint health benefits and the uniform prominence of the joint health representations on the front and back of NBTY's Osteo Bi-Flex packaging, as demonstrated in Section II(A), below.  Because the veracity of the joint health benefits and 7 day relief representations and their materiality can be determined through common proof on a classwide basis, a Class should be certified.  Further, because the Products do not provide the joint health and 7 day relief benefits, the monetary loss to each Class member is identical (the purchase price of the Product).  As set forth in the Expert Report of economist Keith Reutter Ph.D. (Syverson Decl., at Ex. 5), there are several readily available formulas and ample sales data sources that can be used to calculate damages on a common classwide basis.

False advertising and particularly false label cases like this, which are based on uniform

---

[5] Because the UCL was patterned after the FTC Act, decisions by federal courts construing the FTC Act "are more than ordinarily persuasive" in construing the UCL.  *Cel-Tech. Commc'n v. LA CELLULAR*, 20 Cal.4th 163, 185 (1999).

misrepresentations, are routinely certified as class actions under California law because common questions of fact and law predominate. *See generally, e.g.*, *Johns v. Bayer Corp.,* 280 F.R.D. 55 (S.D. Cal. 2012) (certifying a California UCL and CLRA class alleging defendant falsely represents that its Men's Vitamins have prostate health benefits); *Delarosa v. Boiron, Inc.,* 275 F.R.D. 582 (C.D. Cal. 2011) (certifying a class of consumers alleging false and misleading homeopathic product label representations); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) (certifying consumer class alleging defendant falsely represents that its premium-priced yogurt has digestive health benefits no other yogurt has); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009) (same).[6]  The same is true under Illinois law.  *See S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E. 2d 6, 16 (1st Dist. 2011) (affirming certification of an ICFA class alleging defendant made uniform false representations); *see also Gordon v. Boden*, 224 Ill. App. 3d 195 (1st Dist. 1991).

Thus, Plaintiff Cardenas seeks certification of a California-only UCL Class and a California-only CLRA Class, Plaintiff Padilla seeks certification of an Illinois-only ICFA Class, and both Plaintiffs seek certification of a multi-state UCL Class on behalf of all consumers in the 17 states with consumer fraud laws similar to the UCL, who purchased Osteo Bi-Flex during the applicable statutory limitations period in each state (the "Class Period").  Plaintiffs seek injunctive relief and monetary relief for the purchase of these falsely advertised Products.  Plaintiffs also seek an order appointing Plaintiffs Cardenas and Padilla as class representatives and the firms of Bonnett, Fairbourn, Friedman & Balint, P.C. and Stewart M. Weltman LLC (Of Counsel - Levin, Fishbein, Sedran & Berman) as Class counsel pursuant to Fed. R. Civ. P. 23(g).

## II.    COMMON EVIDENCE WILL BE USED TO PROVE CLASS CLAIMS

### A.    Every Bottle Uniformly and Exclusively States Osteo Bi-Flex Provides Joint Health Benefits

Recognizing the importance of point-of-purchase messaging – especially on the package itself

---

[6] *See also Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010) *vacated*, 635 F.3d 1279 (11th Cir. 2011) (on remand, circuit court suggested a broader class definition) (same); *Nelson v. Mead Johnson*, 270 F.R.D. 689 (S.D. Fla. 2010) (certifying consumer class alleging defendant falsely represents that its premium-priced baby formula is the only formula that contains DHA and ARA ingredients).

1  – NBTY has strived to " ███████████████████████████████

2  ██████████████████████████████████████████  Syverson Decl.,

3  Ex. 6 (REX2233-2313 at 2297).  Consequently, *every* Osteo Bi-Flex package sold during the Class

4  Period contained the same affirmative joint health benefit message: that Osteo Bi-Flex will help to

5  "promote mobility", "renew cartilage", "maintain healthy connective tissue" and "improve [] joint

6  comfort" simply by taking the recommended number of tablets each day.

7  TOP                                    LEFT SIDE



21  *See* Syverson Decl., Ex. 3 (Product Labels (D.E. #19-1 to 19-8)).  NBTY admits that it made these

22  uniform joint health benefit representations on the packages of all its Products.  In answer to

23  Paragraph 1 of the Third Amended Complaint (D.E. #67), NBTY "admit[s] that the packages for the

24  Osteo Bi-Flex® products identified in Paragraph 1 of the Complaint have, at certain times, contained

25  statements that Osteo Bi-Flex® helps to "promote mobility," "renew cartilage," and "maintain healthy

connective tissue." Certain of the current Product packages also refer to improving joint comfort."[7]

**B.    Osteo Bi-Flex Does Not Provide Joint Health Benefits or 7 Day Relief**

NBTY's joint health benefit representations are false.   Clinical studies pre-dating and throughout the Class period have conclusively shown that the two main active ingredients in the Osteo Bi-Flex Products - glucosamine hydrochloride and chondroitin sulfate - either alone or in combination, do not provide the represented joint health benefits.  Dr. Schnitzer, Plaintiffs' science expert, who has personally studied the effects of glucosamine hydrochloride and chondroitin sulfate on joint health and is a nationally reknown expert on the clinical study of joint health and musculoskeletal remedies and, as his report and resume reflect, has devoted much of his career to the clinical study of osteoarthritis and musculoskeletal remedies, unequivocally states that: "the vast weight of high-quality, credible evidence supports that glucosamine hydrochloride fails to provide joint health benefits, and similarly, the vast weight of high-quality, credible evidence supports that chondroitin sulfate fails to provide joint health benefits." Syverson Decl., at Ex. 4 (Schnitzer Report at ¶ 12). Thus, "the scientific evidence is clear that Osteo Bi-Flex is not effective at producing the joint health benefits that appear on its package labels." *Id.* at ¶ 11.  For example, Dr. Schnitzer explains that three large scale clinical studies known as the GAIT ("Glucosamine/Chondroitin Arthritis Intervention Trial), represent the "largest," "most definitive," randomized double-blinded studies performed on glucosamine and chondroitin.   These studies, funded by the National Institute of Health, "carefully designed by biostatisticians and clinical investigators and rigorously conducted at a number of sites across the United States," (the largest of which, the 2006 study, Dr. Schnitzer acted as a site investigator and was a co-author), published in 2006, 2008 and 2010, respectively found: "Glucosamine and chondroitin

---

[7] Plaintiffs are not sure at what point in time the representation was not made, but it was made at the time of Plaintiff's purchases and internal documents show that it was made in advertisements during the Class period (Syverson Decl., at Ex. 7 (CAR677)).

sulfate alone or in combination did not reduce pain" and did not provide any "cartilage maintenance"

benefits. *Id.* at 10-11.  Further, since GAIT,

> [T]here have been other high-quality clinical trials which have come to similar conclusions regarding putative benefits of both glucosamine and chondroitin sulfate for pain relief or maintenance of cartilage and joint integrity. Thus, the vast weight of high-quality, credible evidence supports that glucosamine hydrochloride fails to provide joint health benefits, and similarly, the vast weight of high-quality, credible evidence supports that chondroitin sulfate fails to provide joint health benefits.

*Id.* at ¶ 12. (citations omitted).[8]

With regard to the other ingredients in NBTY's Osteo Bi-Flex Products (including 5-Loxin, MSM, Hyaluronic Acid, collagen, Vitamins C and D, manganese and Boron), Dr. Schnitzer opines, "none of these additional [ingredients] has shown benefit for joint health in credible, high-quality scientific studies" and, as a result, "are not effective in the relief of symptoms of osteoarthritis and provide no joint health benefits." *Id.* at ¶¶ 15-18.  Thus, the totality of the high quality and credible scientific evidence strongly supports that glucosamine hydrochloride and chondroitin sulfate, in addition to the other ingredients in the Osteo Bi-Flex Products, "do[] not build or renew cartilage, lubricate joints, promote mobility or help with joint flare-ups; and that these effects are not seen in either 7 days' time or after 4-6 weeks of treatment" and that "[a] vast weight of evidence supports that the ingredients in Osteo Bi-Flex (either alone or in combination) work no better than placebo and that people who bought Osteo Bi-Flex would have been just as well off having taken a simple sugar pill (placebo)." *Id.* at at ¶ 19.

Soon after the last of the GAIT studies was completed, NBTY removed references to "████████████████████████" of various Osteo Bi-Flex Product labels in 2010. Syverson Decl., Ex. 8 (CAR161-245 at 194).

While the above discussion is persuasive evidence of the falsity of NBTY's representations, whether Plaintiffs ultimately prevail on the merits is not the issue at class certification.  However, because resolution of this central issue is common to the Class and will necessarily be resolved

---

[8] The GAIT trial and many of the others have studied people with knee OA.  However, as with other systemic treatments, these results can be extrapolated to reflect a lack of expected joint benefit at other sites in the body. Schnitzer report at ¶ 6.  Additionally, the results of the studies in osteoarthritis are considered reasonable proxies for what might be expected in people having general musculoskeletal pain and discomfort other than osteoarthritis.  *Id.*

through common proofs a Class should be certified.

**C.      Class Certification Is the Only Means For Consumers To Put A Stop to NBTY's Promotion of Its Deceptive Joint Health Benefit and 7 Day Relief Claims**

Class certification is not only the superior means of adjudicating Plaintiffs' consumer fraud claims, it is the only practicable means of putting a stop to NBTY's deceptive joint health benefits marketing campaign – one that the evidence reflects is becoming increasingly aggressive.  NBTY has known about the GAIT studies and numerous other clinical studies demonstrating that glucosamine hydrochloride and/or chondroitin sulfate do not provide the joint health benefits.  Yet, NBTY has made no effort to pull the falsely labeled bottles off the store shelves and cease further publication of its deceptive joint health benefit representations.  More troubling, NBTY sought to increase sales through the use of these same deceptive messages.

Thus, internal documents show that NBTY has concentrated on ███████████ ████████████████████████████████████████████████ Syverson Decl., at Ex. 1 (REX4028-4046 at 4030).  Internal documents also reflect that NBTY targeted ██████████ as it was becoming increasingly difficult to retain repeat purchasers.[9]  Syverson Decl., Ex. 9 (REX3830-3860 at 3848-49).  Further, many current consumers were ████████████████████ on fixed incomes limiting the amount they could spend on joint supplements (making NBTY's conduct all the more egregious).  Thus, NBTY designed a marketing campaign directed at continually ████████████████████████ by pouring millions of dollars, ████████████ in 2010 alone, to ███████████████████ Syverson Decl., Ex. 1 (REX4028-4046 at 4030, 4046) and Ex. 10 (REX5147-5158 at 5150-53).  NBTY also designed ████████████████████████ with ████████████████████████████

---

[9] The retention problem is reflective of the wearing off of the placebo effect associated with these Products.  As Dr. Schnitzer explains: "Because of the nature of the placebo response in the clinical perceived setting of pain, it is to be expected that any product, even if completely ineffective, will result in symptomatic improvement in a significant proportion of affected people, generally in the range of 30-40% with an oral agents and 40-50% and higher with injectable agents. ***Thus, it is of no surprise that an agent such as Osteo Bi-Flex, when marketed with the representations made, would be perceived by many individuals as providing pain relief, just as placebo would be.***  It is my opinion that this underlies the wide use of glucosamine- and chondroitin-containing dietary supplements in general, and Osteo Bi-Flex in this case, for joint symptoms." Schnitzer Report, at 21 (emphasis added; citations omitted).

8

██████████████         – all of which conveyed the same deceptive joint health benefits message.

Syverson Decl., Ex. 1 (REX4028-4046 at 4041-42 (emphasis original)).

### D.   NBTY Profited From its Wrongful Conduct

NBTY's marketing efforts have paid off.  Even though discovery is ongoing and an analysis of all financial data has not yet been completed, NBTY's document production makes clear that the sales of Osteo Bi-Flex are in the multiple millions of dollars each year.  *See, e.g.,* Syverson Decl., at Ex. 1 (REX4028-4046 at 4030 (████████████████████████████████████████████)); and Ex. 9 (REX3830-3860 at 3848 (█████████████████████████████████████████████████████ █████).[10]  NBTY has reaped substantial profit by misrepresenting the joint health benefits of its Osteo Bi-Flex Products.  It is past time to stop NBTY's fraudulent conduct and a class action is the superior and only practicable means to do so.

## III.   PROPOSED CLASS DEFINITIONS

Plaintiffs seek class certification under Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure of the following classes:[11]

**Unfair Competition Law ("UCL") California-Only Class:**
> All consumers in California who, within the applicable statute of limitations, purchased NBTY's Osteo Bi-Flex Products.

**Consumer Legal Remedies Act ("CLRA") California-Only Class:**
> All consumers in California who, within the applicable statute of limitations, purchased NBTY's Osteo Bi-Flex Products.

**Illinois Consumer Fraud Act ("ICFA") Illinois-Only Class:**
> All consumers in Illinois who, within the applicable statute of limitations, purchased NBTY's Osteo Bi-Flex Products.

**Unfair Competition Law ("UCL") 17-State Class:**
> All consumers in California, Arkansas, Connecticut, Delaware, Florida, Hawaii, Idaho, Illinois, Kansas, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Vermont and Washington who, within the applicable statute of limitations of their respective states, purchased NBTY's Osteo Bi-Flex

---

[10] As Dr. Reutter, Plaintiffs' damages expert opines, the total retail and wholesale sales will be readily available from NBTY's sales documents or independent retail data services and that this data will provide the basis upon which to create common class wide formulae to calculate the Class and Class members' damages.  *See* Reutter Report, at ¶¶ 6, 10, n.11; Section IV(C)(1)(d), below.

[11] Excluded from all the proposed Classes are NBTY, its parents, subsidiaries, affiliates, officers and directors, and those who purchased Osteo Bi-Flex for the purpose of resale.

Products.[12]

The Classes, as defined above, are ascertainable as the definitions are precise, with objective characteristics and transactional parameters.  *See, e.g., Churchhill Village, L.L.C.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2010); *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (1999).

## IV.    THIS CASE SATISFIES THE REQUIREMENTS OF RULE 23

Consumer protection claims are ideal for class certification.  *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *In re First Alliance Mortg. Co*., 471 F.3d 977, 992 (9th Cir. 2006); *State of California v. Levi Strauss & Co*., 41 Cal. 3d 460, 471 (1986); *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 807-08 (1971); *Daar v. Yellow Cab Co*., 67 Cal. 2d 695, 704 (1967).  Plaintiffs' statutory claims expressly provide for class certification.  The CLRA even includes class action prerequisites in its provisions.  *See* Cal. Civ. Code §1781; *see also* Cal. Bus. & Prof. Code §17203 (claimants "may pursue representative claims or relief on behalf of others" for violations of the UCL, including false advertising).  Such cases are particularly appropriate for class treatment because "the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct."  *Vasquez*, 4 Cal. 3d at 808; *see also Amchem*, 521 U.S. at 617 (policy at core of class action mechanism is to permit adjudication of small recovery claims).

Class certification presents primarily a procedural issue.  "'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation omitted).  Although courts may inquire into the substance of a case to apply the Rule 23 factors, "[t]he court may not go so far . . . as to judge the validity of the claims."  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (quotation marks omitted).

---

[12] A similar multi-state class could also be certified under Illinois case law involving claims brought under the ICFA, in that the ICFA is similar in all material respects with the consumer fraud laws of the states set forth above.

1

**A.      Plaintiffs Satisfy the Rule 23(a) Prerequisites**

2

Plaintiffs satisfy each of the four Rule 23(a) prerequisites for class certification, referred to as:

3

(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

4

**1.      Numerosity Is Satisfied**

5

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all

6

members is impracticable.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting

7

Fed. R. Civ. P. 23(a)(1)).  "'Where the exact size of the class is unknown, but general knowledge and

8

common sense indicate that it is large, the numerosity requirement is satisfied.'"  *Charlebois v. Angels*

9

*Baseball, Inc.,* No. 10-0853, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 3011).  Although the

10

number of class members by itself is not dispositive, as a general matter, "courts have found that the

11

numerosity requirement is satisfied when class size exceeds 40 members."  *Slaven v. BP Am., Inc.*, 190

12

F.R.D. 649, 654 (C.D. Cal. 2000); *Delarosa*, 275 F.R.D. at 587-88.

13

Here, the numerosity requirement is readily met because it is difficult or inconvenient to join

14

all members of the proposed Classes.  While Plaintiffs are currently unaware of the exact number of

15

consumers who purchased Osteo Bi-Flex, NBTY's internal documents indicate millions of consumers

16

purchased Osteo Bi-Flex during the Class Period.  *See, e.g.,* Syverson Decl., at Ex. 9 (REX3830-3860

17

at 3848 (

18

)); Ex. 1 (

19

20

) (emphasis original)); Ex. 10 (REX5147-5158 at 5150

21

).  These Class members are dispersed geographically across

22

California, Illinois and the other 15 states in the proposed Classes.  Given the size and geographical

23

diversity of the Class members, the numerosity factor is satisfied.  *See Reynoso v. South County*

24

*Concepts*, No. 07-373, 2007 WL 4592119, *2 (C.D. Cal. Oct. 15, 2007) ("The sheer number of

25

potential class members justifies the Court's finding that the class in this case meets the numerosity

26

requirement.").

27

28

### 2.   Commonality Is Satisfied

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 ("*Dukes II*") (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 102 S.Ct. 2364 (1982)).   The plaintiff must allege that the class' injuries "depend upon a common contention" that is "capable of classwide resolution."   *Id.*   In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."   *Id.*   "What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."   *Id.* (internal quotation marks and citation omitted).   This prerequisite is readily met in this case.   To quote the Court in *Wiener*: "The proposed class members clearly share common legal issues regarding [Defendant's] alleged deception and misrepresentations in its advertising and promotion of the Products."   255 F.R.D. at 664-65.   Further, as the *Neal* court in the Central District recently recognized, "because 'some consumers purchased the [product] for other reasons does not defeat a finding that" the product was marketed with a material misrepresentation, which *per se* establishes a common injury." *Neal v. NaturalCare, Inc.*, EDCV 12-00531 DOC (OPx), Order Granting Class Certification, at 12 (12/20/12), Syverson Decl., at Ex. 11.

Plaintiffs' complaint alleges common issues capable of classwide resolution.   For example, whether the scientific evidence is that glucosamine hydrochloride, chondroitin sulfate, and the other ingredients in Osteo Bi-Flex do not provide the joint health benefits as represented on every package of Osteo Bi-Flex sold during the Class period and whether NBTY's packaging and advertising of its Products was deceptive and likely to deceive the public are common questions that can be analyzed and resolved on a classwide basis for Plaintiffs and all Class members.   *See, e.g., Fine v. ConAgra Foods, Inc.*, CV 10-01848-SJO-CFOX, 2010 WL 3632469 at *3 (C.D. Cal. Aug. 26, 2010) ("Since Plaintiff's claims and the proposed class are *based on the same misleading label on the boxes* of popcorn, the Court finds that Plaintiff has sufficiently demonstrated commonality pursuant to Rule 23(a)(2).") (emphasis added).   Thus, commonality is satisfied.

### 3. <u>Typicality Is Satisfied</u>

Rule 23(a)(3) typicality is satisfied where Plaintiffs' claims are "reasonably co-extensive" with absent Class members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *accord Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1232 (9th Cir. 2007) ("*Dukes I*"). Instructive is *Johns,* another false advertising case, where the District Court recently found, in certifying UCL and CLRA claims, that the typicality requirement was satisfied:

> [T]he Men's Vitamin packages purchased by Plaintiffs and all class members prominently and repeatedly featured the identical 'supports prostate health' claim. Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements.

280 F.R.D. at 557; *see also Keilholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330, 338 (N.D. Cal. 2010) (in certifying UCL and CLRA claims, court found typicality requirement was satisfied because: "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings" and therefore are "reasonably co-extensive with those of absent class members").

Likewise, typicality is met here as Plaintiffs and the proposed Class assert exactly the same claim, arising from the same course of conduct – NBTY's deceptive and uniform joint health benefits representations on every Osteo Bi-Flex package sold during the Class period. And Plaintiffs, like every Class member, were injured when they paid money to purchase the Products. *See Johns*, 280 F.R.D. at 557 (finding typicality where "Plaintiffs and class members were allegedly injured when they paid money to purchase the Men's Vitamins"); *see also Neal,* Order at 10, Syverson Decl., at Ex. 11 ("A plaintiff's individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test."). Accordingly, Plaintiffs are well-suited to represent the Classes.

13

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION;
PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
2:11-cv-01615-LKK-CKD

### 4. Adequacy Of Representation

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Wiener*, 255 F.R.D. at 667.

The interests of Plaintiffs and the members of the Class are fully aligned in determining whether NBTY's joint health benefit representations and 7 day relief claim were likely to deceive a reasonable consumer. Further, Plaintiffs are aware of their responsibilities as Class representatives, including remaining knowledgeable and informed about the litigation, acting in the best interests of the Class and participating in the litigation as needed, and are fully prepared to continue to fulfill those responsibilities throughout the litigation. *See* Syverson Decl., at Ex. 12 (Cardenas Decl., at ¶¶ 6-7); and Ex. 13 (Padilla Decl., at ¶¶ 6-7). This is all that is required to satisfy the first prong of the adequacy requirement. *See Wiener*, 255 F.R.D. at 667.

Plaintiffs have satisfied the second prong of the adequacy requirement by retaining counsel with significant experience in prosecuting large consumer fraud class actions, including false advertising cases, who should be appointed Class counsel pursuant to Rule 23(g). *See* Syverson Decl., Ex. 14 (firm resumes). Thus, adequacy is met.[13]

### B. The Requirements Of Rule 23(b)(2) Are Satisfied

#### a. Plaintiffs And The Class Complain Of Standardized Conduct Applicable To The Entire Class

Pursuant to Rule 23(b)(2), a class action is properly certified where the party against whom the relief is sought "has acted or refused to act on grounds generally applicable to a class of persons, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). For a Rule 23(b)(2) class to be certified, "[i]t is sufficient if class members complain

---

[13] Rule 23(g)(1) also requires the Court to appoint Class Counsel. Specifically, Plaintiffs request the Court appoint Bonnett, Fairbourn, Friedman & Balint, P.C., and Stewart M. Weltman LLC (Of Counsel - Levin, Fishbein, Sedran & Berman) as Class Counsel.

of a pattern or practice that is generally applicable to the class as a whole[, e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." *Id*.

Here, Plaintiffs and the Class complain of a standard and uniform practice of false, misleading and deceptive advertising of Osteo Bi-Flex that is generally applicable to the Class as a whole.  As the Court in *Delarosa* found,

> To the extent that Plaintiff seeks injunctive relief, the Court concludes that a subclass may be certified under Rule 23(b)(2). As previously discussed by the Court in finding that Plaintiff met her burden of establishing commonality of facts and law; in this case, should it be determined that Defendant misled consumers regarding the efficacy of Coldcalm, then an injunction prohibiting Defendant from selling Coldcalm with the misleading information would 'provide relief to each member of the class.'

275 F.R.D. at 591-92 (citing *Dukes II*, 131 S.Ct. at 2557).

### b. Plaintiffs' Primary Goal Is Injunctive Relief And An Order Enjoining Further Mislabeling and Marketing of Osteo Bi-Flex

"[C]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." *Molski v. Gleich*, 318 F.3d 937, 949 (9th Cir. 2003) (explaining that "the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief") (overturned on other grounds).  In determining the applicability of Rule 23(b)(2), district courts "examine the specific facts and circumstances of the case, focusing predominantly on the plaintiff's intent in bringing the suit." *Dukes I*, 474 F.3d at 1234.  The key question is whether Plaintiffs' *primary* goal is to obtain injunctive relief and stop NBTY's false and misleading joint health benefits claims, not whether Plaintiffs will ultimately prevail or the possible size of the damages award.  *See id*. at 1234-35.  As the Central District in *Delarosa* recently held in certifying a similar class action:

> [M]onetary relief predominates in [23](b)(2) class actions unless it is incidental to requested injunctive or declaratory relief.  By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. . . . Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.

15

*Delarosa*, 275 F.R.D. at 592 (quoting *Dukes II*, 131 S.Ct. at 2560).

Here, Plaintiffs' primary goal is to stop NBTY's false and misleading joint health benefit claims. Plaintiffs want to make sure that the Osteo Bi-Flex labels are accurate so that consumers know what they are actually buying and what they can realistically expect. *See* Syverson Decl., at Ex. 12 (Cardenas Decl., at ¶ 5) and Ex. 13 (Padilla Decl., at ¶ 5). The damages component of the claims in this case, though substantial, is secondary to the goal of stopping the false labeling and marketing. *Compare Dukes I*, 474 F.3d at 1235 (a suit by current and former employees for gender discrimination was primarily motivated by the desire to protect those class members), *and Molski*, 318 F.3d at 950 (primary goal was to end practice of disability discrimination by owner and operator of service stations); *with Delarosa,* 275 F.R.D. at 592 ("the Court concludes that actual damages [*i.e.*, purchase price of the product] under the CLRA and restitution under the UCL are "incidental" to injunctive relief"). For example, while an award of damages might satisfy injuries suffered prior to judgment, an injunction will cause the fraud to stop and thus prevent future and potentially more damages associated with the continued false advertising and labeling of Osteo Bi-Flex.

Plaintiffs' UCL, CLRA and ICFA claims (and similar consumer protection laws in the other states in the UCL subclass) all include allegations that injunctive relief is necessary to prevent further fraudulent and unfair business practices by NBTY and that money damages alone would not afford adequate and complete relief.

### C. The Requirements Of Rule 23(b)(3) Are Satisfied

Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation

1  omitted); *Wiener*, 255 F.R.D. at 668.

2  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

3  cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Rule 23(b)(3) focuses

4  on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When

5  common questions present a significant aspect of the case and they can be resolved for all members of

6  the class in a single adjudication, there is clear justification for handling the dispute on a representative

7  rather than on an individual basis." *Id*. (citation omitted). As such, "[w]hen one or more of the central

8  issues in the action are common to the class and can be said to predominate, [a class action] will be

9  considered proper...even though other matters will have to be tried separately." *Gartin v. S & M Nutec,*

10 *LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) (internal citation omitted; alteration in original); *Wiener*,

11 255 F.R.D. at 668.

12        1.   **Predominance Is Satisfied**

13             a.   **Common Issues Can Be Proven on a Classwide Basis**

14 "Predominance is a test readily met in certain cases alleging consumer or securities fraud."

15 *Amchem*, 521 U.S. at 625. In evaluating whether common issues predominate over individual issues,

16 the class-wide issues should constitute a significant aspect of the case. "[T]he predominance 'inquiry

17 trains on legal or factual questions that qualify each class member's case as a genuine controversy.'"

18 *Id*. at 623. "Courts in California 'routinely find that this inquiry focuses on the Defendants'

19 representations about the product...'" *Neal*, Order at 15 (predominance satisfied where "central

20 predominating question is whether Defendants' label and marketing statements are materially

21 misleading"), Syverson Decl. Ex. 11. Rule 23(b)(3) demands only predominance of common

22 questions, not exclusivity or unanimity of them.

23 Common issues unquestionably predominate in this litigation. With respect to liability, two

24 overriding common questions are: (1) whether NBTY misrepresented that Osteo Bi-Flex has the

25 ability to help "promote mobility", "renew cartilage", "maintain healthy connective tissue" and

26 improve joint comfort, and (2) whether the misrepresentations were likely to deceive a reasonable

27 consumer. The first is binary – either NBTY misrepresented that Osteo Bi-Flex provides joint health

28

benefits or not.  If each Class member were to pursue his or her claim individually, the evidence, including the science, necessary to support the individual claims would be identical in each case.  *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 493 (N.D. Cal. 2011) (in finding predominance was satisfied, court found that each of the common questions can be proven with "generalized evidence…on a class-wide basis"); *see generally* Schnitzer Report.  The second predominant question regarding the joint health benefits representation "likelihood to deceive a reasonable consumer" is an objective inquiry based on the materiality of the representation.  *See Tobacco II*, 46 Cal. 4th at 327 (CLRA and UCL claims); *see also Kwikset,* 51 Cal. 4th at 332-33 (same).  Label representations are presumed to be material.  *See Pantron*, 33 F.3d at 1095-96; *see also Kwikset,* 51 Cal. 4th at 328.  And, the joint health benefit representation need only be a "factor" – not the only factor or even a "predominating factor" – motivating the purchase.  *See Tobacco II*, 46 Cal. 4th at 326-27; *see also Kwikset*, 51 Cal. 4th at 327 (same).  In addition to the predominate liability issues, Plaintiffs and all Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing.  Under these circumstances, there is a sufficient basis to find that the requirements of Rule 23(b)(3) are present.  *See Weiner*, 255 F.R.D. at 669 (predominance satisfied when alleged misrepresentation of product's health benefits was displayed on every package).

### b.  California Law Can Be Applied to Plaintiff's California-Only UCL and CLRA Classes and the UCL Multi-State Class

California law clearly applies to the California-only UCL and CLRA claims Plaintiffs seek to certify.  Further, California (as the forum state) can constitutionally apply its law to a multi-state class absent a showing by NBTY of "outcome determinative" conflicts among the states.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Sun Oil Co. v. Wortman*, 486 U.S. 717 (1988).  As found by Judge Carter in this District in *Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012), the Ninth Circuit's opinion in *Mazza v. American Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012), did not change prior California law requiring a defendant to show that differences in state law are "material," that is, they "make a difference in this litigation," or change a plaintiff's ability to have a multi-state class certified under the UCL where there are no conflicts of law based on the "circumstances of [the particular] case." *Id*. at 547.

Focusing on the particular facts and circumstances of this case, there are no "outcome determinative" conflicts.  Plaintiffs seek to certify a 17-state Class consisting of states that all have consumer protection laws that are materially identical to the UCL.[14]  *See* Syverson Decl, Ex. 15 (setting out the relevant laws in each of the 17 Class states).  Plaintiffs have carefully defined the UCL multi-state class in a manner which makes any differences between applicable laws immaterial, including limiting the Class definition to claims within the applicable statute of limitations of each state within the subclass.  *See* Class Definition, Section III.[15]

### c.    Reliance and Causation Issues Do Not Defeat Predominance

It is well-established that to succeed on a consumer protection claim under the UCL, CLRA and ICFA, Plaintiffs "need only show that 'members of the public are likely to be deceived'" by NBTY's representations.  *Tobacco II*, 46 Cal. 4th at 312; *see also PJ's Concrete,* 345 Ill. App. 3d at 1002 (under ICFA multi-state class certification appropriate where the misrepresentation is uniform and "has at least the potential to deceive customers").[16]  Further, as discussed *supra*, the California and Illinois consumer protection laws take an objective approach; that of the ***reasonable*** consumer, not the ***particular*** consumer.  A business practice is likely to deceive members of the public where "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie*, 105 Cal. App. 4th at 508; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) ("The question has arisen as to which members of the public need be likely to be deceived.  The law focuses on a reasonable consumer who is a

---

[14] A number of California District Courts have embraced the possibility of subclassing in analogous false labeling cases.  *See, e.g., Forcellati v. Hyland's Inc.*, No. CV 12-1983, 2012 WL 2513481, at *2 (N.D. Cal. June 1, 2012); *Allen v. Hyland's Inc.,* No. CV 12-01150, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012) ("*Mazza* explicitly left open the possibility that a court could certify subclasses grouped around 'materially different bodies of state law'"); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 685-86 (N.D. Cal. 1986) (cited by *Mazza*) (holding that subclassing various state's law would be appropriate and that "final resolution of any conflict-of-law issues that may arise" should be resolved pursuant to Rule 23).

[15] The Court has the ability to modify the class definitions further if deemed necessary.  *Mazza*, 666 F.3d at 596 ("Finally, our opinion does not foreclose in an appropriate case the use of smaller statewide classes of those purchasing in a particular state, or the use of subclasses within a larger class.")

[16] *See also Williams v. Gerber Food Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008); *Countrywide Fin. Corp. v. Bundy*, 187 Cal. App. 4th 234, 257 (2010); *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 507-08 (2003).

member of the target population."); *Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663, 679-80 (2006) (the CLRA is to be "liberally construed" and "[c]onduct that is likely to mislead a reasonable consumer thus violates the CLRA"); *see also Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 505 (1996) (the ICFA focuses on the "reasonable person standard, *i.e.* whether the representation concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase"); *PJ's Concrete,* 345 Ill. App. 3d at 1002.[17]

The UCL claim (like the law in the other 16 states in the UCL multi-state subclass) does not require classwide proof of reliance or causation. *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *Tobacco II*, 46 Cal.4th at 320 (2009)) ("[R]elief under the UCL is available without individualized proof of deception, reliance and injury.") (emphasis added); *Mass Mutual,* 97 Cal. App. 4th at 1290 ("[A] section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage."); *see* Syverson Decl, Ex. 15 (state law chart). Likewise, the ICFA does not require proof of reliance. *See Connick,* 74 Ill.2d at 501 ("Plaintiff's reliance is not an element of statutory consumer fraud."). Rather, the ICFA simply requires that a plaintiff have been deceived in some manner, which is supported by a finding that defendant's misrepresentations are material. *See, e.g., PJ's Concrete,* 345 Ill. App. 3d at 1002 (under the ICFA this issue is whether the misrepresentation "has at least the potential to deceive customers").

Unlike the UCL and ICFA, the CRLA does require a showing of reliance. *See, e.g., In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155 (2010). Importantly, where "material misrepresentations were made to the class members, at least an inference of reliance [i.e., causation/injury] would arise as to the entire class." *See Mass Mutual*, 97 Cal.App.4th at 1292-93; *see also In re POM Wonderful LLC Mktg., and Sales Practices Litig.*, No. ML 10–02199 DDP (RZx), 2012 WL 4490860, at *5 (C.D. Cal. Sept. 28, 2012) ("[A]n inference of reliance arises as to the entire

---

[17] *See, e.g., Weinstat v. Dentsply Intern., Inc*., 180 Cal. App. 4th 1213, 1223 (2010); *Lavie,* 105 Cal. App. 4th at 512; *Kasky v. Nike Inc*., 27 Cal. 4th 939, 951 (2002); *see also Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992); *Mass Mutual life Ins. Co. v. Super. Ct.,* 97 Cal. App. 4th 1282, 1290 (2002).

class where, as here, material representations have been made to the entire class").  As the court in *Mass Mutual* explained:

> Causation as to each class member is commonly proved more likely than not by materiality.  That showing will undoubtedly be conclusive as to most of the class.  The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality to all.

97 Cal. App. 4th at 1292.

Materiality is "judged by an objective, 'reasonable man' standard," not individual subjective beliefs, and is "subject to common proof." *In re POM Wonderful,* 2012 WL 4490860, at *5; *see also Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997) ("[a] misrepresentation is judged to be 'material' 'if a reasonable man would attach importance to its existence or nonexistence in determining his choice of the transaction in question[.]'").  "Express product claims are presumed to be material…" *Pantron,* 33 F.3d at 1095-96; *see also Kwikset,* 51 Cal. 4th at 328.  Importantly, the misrepresentation need not be the "sole or even the predominating or decisive factor influencing his conduct….It is enough that the representation played a substantial part, and so had been a substantial factor, in influencing his decision.'" *Tobacco II*, 46 Cal. 4th at 326-27; *see also Kwikset*, 51 Cal. 4th at 327 (same).

Here, an inference of reliance is warranted.  Each package of Osteo Bi-Flex sold during the Class period uniformly and predominantly made the same joint health benefits misrepresentations.  As the court in *Kwikset* found: "Simply stated: labels matter.  The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label."  51 Cal. 4th at 328.  Likewise, in *Negrete v. Allianz Life Ins. Co.*, in finding predominance met, Judge Synder agreed that "'Consumers are nearly certain to rely on prominent (and prominently marketed) features of a product which they purchase,' particularly where there are not otherwise compelling reasons for purchasing a product that is allegedly worth less than the purchase price."  Nos. CV 06-6838 CAS (MANx), 2012, WL 6737390, at *20 (C.D. Cal. Dec. 27, 2012) (citations omitted).  The Court's observations are supported here by NBTY's internal marketing documents reflecting NBTY's ███████████████████████████████

21

1  ███   Syverson Decl., at Ex. 1 (REX4028-4046 at 4030).  Because Plaintiffs will demonstrate

2  classwide exposure through common evidence, proof of reliance may be inferred from circumstantial

3  evidence warranting submission to a jury without testimony from each Class member.

4          **d.**        **Relief Can Be Determined On A Classwide Basis**

5        There are multiple means of measuring economic loss available under the UCL, CLRA and

6  ICFA.  Actual damages for Plaintiffs' CLRA claim may be calculated by adding together the purchase

7  price paid by Class members. *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993).  The restitution

8  permitted under the CLRA and UCL may be similarly determined.  As noted in *Wiener*: "with respect

9  to the restitution permitted under the CLRA and UCL, the Court has 'very broad' discretion to

10  determine an appropriate remedy award as long as it is supported by the evidence and is consistent

11  with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired."

12  *Wiener*, 255 F.R.D. at 670-71 (citing *Colgan*, 38 Cal.Rptr.3d at 58-63).

13        In keeping with the applicable law, Plaintiffs' damages expert, Keith A. Reutter, Ph.D., has

14  opined that "there are reliable methods available to estimate damages to the proposed plaintiff Class

15  using common proof and a common formulaic approach."  Syverson Decl., at Ex. 5 (Reutter Report at

16  ¶ 13).  Using both NBTY's sales data (*e.g.*, Syverson Decl., at Ex. 1 (███████████████████

17  ████████████████████████████████████████████████████████████████████████████████

18  Ex. 9 ███████████████████████████████████████████████████████████████████████

19  and Ex. 16 ███████████████████████████████████)  and/or data from independent sources

20  that track and record NBTY's sales information[18], Dr. Reutter will be able to estimate damages based

21  on either the "Retail Method" or the "Wholesale Method," which consists of calculating the total

22  quantity (units sold) of Osteo Bi-Flex distributed and sold in the states that are ultimately included in

23

24  [18] Dr. Reutter noted that independent sources, such as Nielsen and IRI, will have information from
which damages can be calculated.  *See* Reutter Report at ¶¶ 6, 10, n. 11.  For example, Nielsen

25  provides access to extensive consumer market information, including volume, pricing, promotion, and
profit information. *See* http://www.nielsen.com/us.  NBTY's internal documents confirm that these

26  industry sources have sales information from which Dr. Reutter can calculate damages.  *See, e.g.*,
Syverson Decl., at 9 (REX3830-3860 at 3848) (███████████████████████████████████

27  ██████████████████████████████); REX4028-4046 at 4030 (██████████████████████
████████████████████████████████████).

28

the class that Plaintiffs seek to certify, multiplied by either the retail or wholesale price (as applicable) of each Osteo Bi-Flex product. Reutter Report at ¶¶6, 9-12.

Thus, classwide damages are readily determined. While individual damages will vary, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barack*, 524 F.2d 891, 905 (9th Cir. 1975); *In re POM Wonderful,* 2012 WL 4490860, at *5.

### 2. A Class Action Is Superior to Other Available Methods of Adjudicating the Issues Raised

Rule 23(b)(3) superiority "requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (citation omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the superiority requirement satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

Liability in this action will turn on whether NBTY's uniform joint health benefit representations are false, misleading or deceptive; meaning judicial efficiency weighs in favor of a class action. *See Delarosa,* 275 F.R.D. at 594-95. Likewise, it is not economically feasible for the many thousands of Class members to pursue their claims against NBTY on an individual basis given that the amount in controversy is in the range of approximately $19.99-$44.99 per purchase (dependent on the tablets per bottle) compared to the enormous expense associated with litigating the question of whether NBTY's claims are adequately supported by science. *Id.*, *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez*, 4 Cal. 3d at 808. And, because the proposed UCL and CLRA state classes and UCL multi-state class involve California law having the litigation occur in a California court is preferable. *See Wiener*, 255 F.R.D. at 671.

Consideration of the alternatives "underscores the wisdom of a class action in this instance," because it is clear that "[i]f plaintiffs cannot proceed as a class, … most will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Id.* at 672 (citations omitted). Thus, there simply is no other practical method of adjudicating these

23

1   claims.

2   **V.      CONCLUSION**

3        For the reasons stated herein, Plaintiffs Liliana Cardenas and Francisco Padilla, on behalf of

4   themselves and the proposed Classes, respectfully request that the Court issue an order granting this

5   motion for class certification and appointing Plaintiffs as class representatives and the firms of

6   Bonnett, Fairbourn, Friedman & Balint, P.C. and Stewart M. Weltman LLC (Of Counsel - Levin,

7   Fishbein, Sedran & Berman) as Class Counsel.

8   Dated:  January 28, 2013

9                                                 BONNETT, FAIRBOURN, FRIEDMAN
10                                                   & BALINT, P.C.

11                                                 /s/ Patricia N. Syverson
12                                                Elaine A. Ryan
                                                  Patricia N. Syverson (203111)
13                                                Lindsey M. Gomez-Gray
                                                  2325 E. Camelback Road, Suite 300
14                                                Phoenix, AZ 85016
                                                  eryan@bffb.com
15                                                psyverson@bffb.com
                                                  lgomez-gray@bffb.com
16                                                Telephone:  (602) 274-1100

17                                                BONNETT, FAIRBOURN, FRIEDMAN
                                                  & BALINT, P.C.
18                                                Manfred Muecke (222893)
                                                  600 W. Broadway, Suite 900
19                                                San Diego, California 92101
                                                  mmuecke@bffb.com
20                                                Telephone:  (619) 756-7748

21                                                STEWART M. WELTMAN LLC
                                                  Stewart M. Weltman
22                                                122 S. Michigan Avenue, Suite 1850
                                                  Chicago, IL 60603
23                                                sweltman@weltmanlawfirm.com
                                                  Telephone:  (312) 588-5033
24                                                (Of Counsel Levin Fishbein Sedran & Berman)

25                                                LEVIN FISHBEIN SEDRAN & BERMAN
                                                  Howard J. Sedran
26                                                510 Walnut Street
                                                  Philadelphia, Pennsylvania 19106
27                                                hsedran@lfsblaw.com
                                                  T: (215) 592-1500

28

                                                  24

1          Attorneys for Plaintiffs and the Class

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2013, I electronically filed the foregoing **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 28th day of January 2013.

s/*Patricia N. Syverson*

Patricia N. Syverson